# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

Allstate Insurance Company;
Allstate Fire and Casualty Insurance
Company; and Allstate Property and
Casualty Insurance Company,

       Plaintiffs,

v.

Southeast Michigan
Surgical Hospital, LLC, et al.,

       Defendants.

Case No.: 2:22-cv-11684
District Judge: Stephen J. Murphy, III
Magistrate Judge: Elizabeth A. Stafford

---

KING, TILDEN, MCETTRICK & BRINK
Nathan A. Tilden (P76969)
Andrew H. DeNinno
William G. Potter
*Attorneys for Plaintiffs*
38777 Six Mile Rd., Ste. 314
Livonia, MI 48152
(734) 521-9000
ntilden@ktmpc.com
adeninno@ktmpc.com
wpotter@ktmpc.com

CHAPMAN LAW GROUP
Ronald W. Chapman, Sr., M.P.A.
LL.M. (P37603)
John C. Cardello (P85082)
*Attorneys for Defendant Southeast
Michigan Surgical Hospital, LLC*
1441 W. Long Lake Rd., Ste. 310
Troy, MI 48098
(248) 644-6326
rchapman@chapmanlawgroup.com
jcardello@chapmanlawgroup.com

HALL, RENDER, KILLIAN, HEATH &
LYMAN, P.C.
Mark R. Adams (P47065)
Jessica N. Biondo (P85356)
David B. Honig (IN: 22247-49)
*Attorneys for Defendant
Comprehensive Neuromonitoring, LLC*
101 W. Big Beaver Rd., Ste. 745
Troy, MI 48084
(248) 519-3093
madams@hallrender.com

ATNIP & ASSOCIATES, PLLC
Heather J. Atnip (P69613)
Anna E. Wright (P72611)
*Attorneys for Defendant Martin
Quiroga, D.O. and Martin Quiroga,
P.C.*
400 Water St., Ste. 205
Rochester, MI 48307
(248) 599-1607
heather@atniplawyers.com
anna@atniplawyers.com

jbiondo@hallrender.com
dhonig@hallrender.com

PAZNER LAW
Bruce K. Pazner
*Attorney for J. Alan Robertson and J.
Alan Robertson, M.D., P.C.*
15200 E. Jefferson Ave., Ste. 104
Grosse Pointe Park, MI 48230
(313) 822-2244
bruce@paznerlaw.com

GIARMARCO, MULLINS, & HORTON, P.C.
Geoffrey S. Wagner (P70839)
*Attorney for Def. Sidney Broder, M.D.*
101 W. Big Beaver Rd., 10th Floor
Troy, MI 48084
(248) 457-7000
gwagner@gmhlaw.com

---

## DEFENDANT SOUTHEAST MICHIGAN SURGICAL HOSPITAL, LLC'S MOTION TO DISMISS ALLSTATE'S COMPLAINT AND IN THE ALTERNATIVE TO STRIKE CERTAIN ALLEGATIONS IN THE COMPLAINT [ECF NO. 1]

NOW COMES Defendant SOUTHEAST MICHIGAN SURGICAL HOSPITAL, L.L.C., by and through its attorneys CHAPMAN LAW GROUP, and for its Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) and in the alternative Motion to Strike pursuant to Rule 12(F), and Local Rule 7.1, states as follows:

1. On July 22, 2022, Plaintiffs filed their Complaint in this matter. (**ECF No. 1**).

2. Plaintiffs' Complaint alleges that Defendants violated the federal Racketeer Influenced and Corrupt Organizations (RICO) Act, 18 U.S.C. § 1962(c) and (d); common law fraud; civil conspiracy; payment under mistake of fact; and unjust enrichment. (**ECF No. 1, PageID.89, 91, 105, 107, 108**).

3.      Plaintiffs also seek declaratory relief seeking an Order stating that no previously denied and pending claims submitted to them by Defendants are compensable. (**ECF No. 1, PageID.109**).

4.      For the reasons set forth in the Brief accompanying this Motion, Plaintiffs' claims are barred by the applicable statute of limitations. See *Rotella v. Wood*, 528 U.S. 549 (2000).

5.      Furthermore, Plaintiff's Complaint fails to state a claim for violation of the RICO statute.

6.      Plaintiffs' Complaint fails to plead facts showing the conduct of an enterprise. See *Boyle v. United States*, 556 U.S. 938, 946, 129 S. Ct. 2237, 173 L. Ed. 2d 1265 (2009).

7.      Plaintiffs' Complaint does not satisfy the "distinctness" requirement for RICO claims. See *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 161 (2001); *Begala v. PNC Bank, Ohio, N.A.*, 214 F.3d 776 (6th Cir. 2000).

8.      Plaintiffs' Complaint does not plausibly allege a violation of Section 1962(d). See *Salinas v. United States*, 522 U.S. 52, 63 (1997); *United States v. Corrado*, 227 F.3d 543, 553-554 (6th Cir. 2000).

9.      Likewise, Plaintiffs' Complaint fails to plead common law fraud with the requisite particularity. See *Hi-Way Motor Co. v. Int'l. Harvester Co.*, 398 Mich. 330, 336; 247 N.W.2d 813 (1976)

10.    Plaintiffs' Complaint also fails to state a claim for civil conspiracy. See *Fenestra Inc v Gulf American Land Corp*, 377 Mich. 565, 593, 141 NW2d 36 (1966).

11.    Plaintiffs' Complaint fails to plead a claim for "payment under mistake of fact" because it does not allege there is a contract to reform. See *Johnson Family L.P. v. White Pine Wireless, LLC*, 281 Mich. App. 364 (2008).

12.    Plaintiffs' Complaint fails to plead a claim for unjust enrichment. See *Belle Isle Grill Corp v. City of Detroit*, 256 Mich. App. 463, 478; 666 N.W.2d 271 (2003).

13.    Plaintiffs' Declaratory Judgment request must be dismissed. See *Davis v. United States*, 499 F.3d 590, 594 (6th Cir. 2007).

14.    Finally, many allegations in Plaintiffs' Complaint are impertinent and irrelevant and should be stricken. See *Operating Eng'rs Local 324 Health Care Plan v. G&W Constr. Co.*, 783 F.3d 1045, 1050 (6th Cir. 2015)

15.    Before filing this Motion, counsel for Defendant Southeast Michigan Surgical Hospital, LLC sought concurrence with the relief requested herein from Plaintiffs' counsel in accordance with E.D. Mich. L.R. 7.1. On September 13, 2021, Plaintiffs' counsel denied concurrence and stated his intention to oppose this Motion.

4

WHEREFORE, Defendant SOUTHEAST MICHIGAN SURGICAL HOSPITAL, L.L.C., respectfully requests that this Honorable Court grant its Motion to Dismiss, dismiss Plaintiff's Complaint against them in its entirety, or in the alternative, grant its Motion to strike, and grant such other and further relief as this court deems just and equitable.

Respectfully submitted,
CHAPMAN LAW GROUP

Dated: October 17, 2022                 /s/ Ronald W. Chapman Sr.
                                        Ronald W. Chapman Sr., M.P.A.,
                                        LL.M. (P37603)
                                        John C. Cardello (P58082)
                                        Attorneys for Defendant Southeast Michigan
                                        Surgical Hospital, LLC
                                        1441 W. Long Lake Rd., Suite 310
                                        Troy, MI 48098
                                        (248) 644-6326
                                        rchapman@chapmanlawgroup.com
                                        jcardello@chapmanlawgroup.com

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

Allstate Insurance Company;
Allstate Fire and Casualty Insurance
Company; and Allstate Property and
Casualty Insurance Company,

       Plaintiffs,

v.

Southeast Michigan
Surgical Hospital, LLC, et al.,

       Defendants.

Case No.: 2:22-cv-11684
District Judge: Stephen J. Murphy, III
Magistrate Judge: Elizabeth A. Stafford

---

KING, TILDEN, MCETTRICK & BRINK
Nathan A. Tilden (P76969)
Andrew H. DeNinno
William G. Potter
*Attorneys for Plaintiffs*
38777 Six Mile Rd., Ste. 314
Livonia, MI 48152
(734) 521-9000
ntilden@ktmpc.com
adeninno@ktmpc.com
wpotter@ktmpc.com

CHAPMAN LAW GROUP
Ronald W. Chapman, Sr., M.P.A.
LL.M. (P37603)
John C. Cardello (P85082)
*Attorneys for Defendant Southeast
Michigan Surgical Hospital, LLC*
1441 W. Long Lake Rd., Ste. 310
Troy, MI 48098
(248) 644-6326
rchapman@chapmanlawgroup.com
jcardello@chapmanlawgroup.com

HALL, RENDER, KILLIAN, HEATH &
LYMAN, P.C.
Mark R. Adams (P47065)
Jessica N. Biondo (P85356)
David B. Honig (IN: 22247-49)
*Attorneys for Defendant
Comprehensive Neuromonitoring, LLC*
101 W. Big Beaver Rd., Ste. 745
Troy, MI 48084
(248) 519-3093
madams@hallrender.com

ATNIP & ASSOCIATES, PLLC
Heather J. Atnip (P69613)
Anna E. Wright (P72611)
*Attorneys for Defendant Martin
Quiroga, D.O. and Martin Quiroga,
P.C.*
400 Water St., Ste. 205
Rochester, MI 48307
(248) 599-1607
heather@atniplawyers.com
anna@atniplawyers.com

i

jbiondo@hallrender.com
dhonig@hallrender.com

PAZNER LAW
Bruce K. Pazner
*Attorney for J. Alan Robertson and J.*
*Alan Robertson, M.D., P.C.*
15200 E. Jefferson Ave., Ste. 104
Grosse Pointe Park, MI 48230
(313) 822-2244
bruce@paznerlaw.com

GIARMARCO, MULLINS, & HORTON,
P.C.
Geoffrey S. Wagner (P70839)
*Attorney for Def. Sidney Broder, M.D.*
101 W. Big Beaver Rd., 10th Floor
Troy, MI 48084
(248) 457-7000
gwagner@gmhlaw.com

**MEMORANDUM IN SUPPORT OF SOUTHEAST MICHIGAN SURGICAL HOSPITAL, LLC'S MOTION TO DISMISS ALLSTATE'S COMPLAINT AND IN THE ALTERNATIVE TO STRIKE CERTAIN ALLEGATIONS IN THE COMPLAINT [ECF NO. 1]**

# **TABLE OF CONTENTS**

INDEX OF AUTHORITIES.................................................................. iv

INDEX OF EXHIBITS ...................................................................... vii

STATEMENT OF ISSUES PRESENTED.......................................... viii

CONTROLLING/APPROPRIATE AUTHORITY FOR RELIEF SOUGHT ..........x

   A.  Motion to Dismiss ................................................................x

   B.  Motion to Strike................................................................ xii

I.     STATEMENT OF FACTS ...........................................................1

II.    LEGAL ARGUMENT ...............................................................3

   A.  Plaintiff's Claims are Barred by the Statute of Limitations ............................3

     1.  The "Injury Discovery" Rule Governs Civil RICO Claims........................3

     2.  Allstate Admits it Failed to Make a Timely Inquiry .....................................5

     3.  Allstate Admits Possession of Evidence It Believes Suggest Fraud............7

   B.  Allstate Fails to State a Claim for Violation of the RICO Statute ................11

     1.  The Complaint Fails to Plead Facts Showing the Conduct of an Enterprise .......................................................................................11

     2.  The Complaint Does Not Satisfy the "Distinctness" Requirement for RICO Claims ..............................................................................17

     3.  The Complaint Does Not Plausibly Allege a RICO Conspiracy ...............21

   C.  Allstate Fails to Plead Common Law Fraud with the Requisite Particularity 23

   D.  Allstate Fails to State a Claim for Civil Conspiracy ......................................25

   E.  Allstate Fails to Plead a Claim for "Payment Under Mistake of Fact" Because it Has Not Alleged There is a Contract to Reform ................................26

   F.  Allstate Fails to Plead a Claim for Unjust Enrichment ..................................26

   G.  Allstate's Declaratory Judgment Claim Must be Dismissed ..........................28

   H.  Many Allegations in the Complaint are Improper and Should be Stricken ...28

III.   CONCLUSION AND RELIEF REQUESTED..............................................33

## <u>INDEX OF AUTHORITIES</u>

**Cases**

*Allstate Ins. Co. v. Awan & Assocs. P.C.*, No. 11-11988, 2014 U.S. Dist. LEXIS 197872 (E.D. Mich. June 6, 2014)............................................................................9

*Allstate Ins. Co. v. OMIC* No. 17-13908, 2018 U.S. Dist. LEXIS 230296 (E.D. Mich. Sept. 24, 2018) ...................................................................................................... 33

*Advocacy Org. v. Auto Club Ins. Ass'n*, 176 F.3d 315 (6th Cir. 1999) ..................11

*Altobelli v. Hartmann*, 499 Mich. 284, 884 N.W.2d 537 (Mich. 2016)..................23

*Am. Premier Underwriters, Inc. v. AMTRAK*, 839 F.3d 458 (6ᵗʰ Cir. 2016)...........10

*Ashcroft v. Iqbal*, 556 U.S. 662, 678-679 (2009).....................................................17

*Bahr v. Miller Bros Creamery*, 365 Mich. 415, 112 N.W.2d 463 (1961) ...............25

*Begala v. PNC Bank, Ohio, N.A.*, 214 F.3d 776 (6ᵗʰ Cir. 2000) ..............................18

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955 (2007)................. 17, 20

*Boyle v. United States*, 556 U.S. 938, 129 S. Ct. 2237, 173 L. Ed. 2d 1265 (2009…11

*Brouwer v. Raffensperger, Hughes & Co.*, 199 F.3d 961 (7ᵗʰ Cir. 2000)................22

*Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158 (2001). ...........................17

*Cooperative de Ahorro y Credito Aguada v. Kidder, Peabody & Co.*, 129 F.3d 222 (1ˢᵗ Cir. 1997) ...........................................................................................................5

*Cruz v. FXDirectDealer, LLC*, 720 F.3d 115 (2d Cir. 2013). ................................16

*Davis v. Mut. Life Ins. Co. of New York*, 6 F.3d 367 (6th Cir. 1993). .....................12

*E.E.O.C. v J.H. Rough Paking Co.*, 246 F.3d 850 (6ᵗʰ Cir. 2001), .........................20

*Efron v. Embassy Suites (Puerto Rico), Inc.*, 223 F.3d 12 (1ˢᵗ Cir. 2000)...............22

*Fenestra Inc v Gulf American Land Corp*, 377 Mich. 565, 141 NW2d 36 (1966). 25

*Frank v. Dana Corp.*, 547 F.3d 564 (6ᵗʰ Cir. 2008).................................................24

*Great Rivers Coop. v. Farmland Indus., Inc.*, 120 F.3d 893 (8ᵗʰ Cir. 1997). ............5

*Hi-Way Motor Co. v. Int'l. Harvester Co.*, 398 Mich. 330; 247 N.W.2d 813 (1976) ...................................................................................................................................23

*In re Nissan N. Am. Inc. Odometer Litig.*, 644. F.Supp.2d 873 (D.C. Tenn. 2009) 20

*In re Rospatch Sec. Litigation*, 760 F. Supp. 1239 (W.D. Mich. 1991). .................28

iv

*Int'l Ass'n of Mach. and Aerospace Workers v. Tenn. Valley Auth.*, 108 F.3d 658 (6th Cir. 1997) .......................................................................................28

*Isaak v. Trumbull Sav. & Loan Co.*, 169 F.3d 390 (6th Cir. 1999). ............... 4, 6, 10

*Johnson Family L.P. v. White Pine Wireless, LLC*, 281 Mich. App. 364 (2008). ..26

*Llewellyn-Jones v. Metro Prop. Grp. LLC*, 22 F.Supp.3d 760 (E.D. Mich. 2014) .33

*Magnum v. Archdiocese of Philadelphia*, 253 Fed. App'x 224 (3rd Cir. 2007) ......22

*Mekani v. Homecoming Financial, LLC*, 752 F. Supp. 2d 785, 2010 WL 2681077 ............................................................................................................25

*Morris Pumps v. Centerline Piping, Inc.*, 273 Mich. App. 187; 729 N.W.2d 898 (Mich. App. 2006)...............................................................................................27

*Papasan v. Allain*, 478 U.S. 265 (1986) ...............................................................9

*Reves v. Ernst & Young*, 507 U.S. 170 (1993). ............................................... 15, 18

*Rotella v. Wood*, 528 U.S. 549 (2000) ........................................... 3,  4, 6, 7

*Salinas v. United States*, 522 U.S. 52 (1997)..................................................22

*Belle Isle Grill Corp v. City of Detroit*, 256 Mich. App. 463; 666 N.W.2d 271 (2003). ...............................................................................................................27

*Sims v. Ohio Cas. Ins. Co.*, 151 F. App'x 433 (6th Cir. 2005)..............................4, 9

*Stratton v. Portfolio Recovery Assocs., LLC*, 770 F3d. 443 (6th Cir. 2014) ...........21

*Taylor Grp. V. ANR Storage Co.*, 24 F. App'x 319 (6th Cir. 2001)..........................4

*United Food & Commercial Workers Unions v. Walgreen Co.*, 719 F.3d 849 (7th Cir. 2013), ........................................................................................................16

*United States v. Corrado*, 227 F.3d 543 (6th Cir. 2000) .........................................21

*Uselman v. Razvan Pop*, 495 F. Supp. 3d 528 (E.D. Mich. 2020) ..........................4

*West Hills Farms, LLC v. ClassicStar Farms, Inc. (In re ClassicStar Mare Lease Litig.)*, 727 F.3d 473 (6th Cir. 2013)................................................. 11, 12

*Workers Union and Employers Midwest Health Benefits Fund v. Walgreen Co.*, 719 F.3d 849 (7th Cir. 2013)...........................................................................21

## Statutes

(RICO) Act, 18 U.S.C. § 1962(c) and (d)....................................... *passim*

18 U.S.C. § 1961(4). ....................................................................... 11, 25

28 U.S.C. § 2201..............................................................................28

Mich. Comp. Law § 500.3101 ...................................................................1

**Rules**

Fed. R. Civ. P. 9(b)…………………………………………………………..24

Fed. R. Civ. P. 12(b)(6)................................................................... 11, 17

# INDEX OF EXHIBITS

**EXHIBIT A:**    *Allstate Ins. Co. v. OMIC*, No 17-13908, 2018 U.S. Dist. LEXIS 230296\* (E.D. Mich. Sept. 24, 2018).

**EXHIBIT B:**    *Sims v. Ohio Cas. Inc. Co.*, 151 Fed. App'x 433 (6th Cir. 2005).

**EXHIBIT C:**    *Taylor Group v. ANR Storage Co.*, 24 Fed. App'x 319 (6th Cir. 2001)**.**

**EXHIBIT D:**    *Allstate Inc. Co. v. Awan & Assocs. P.C.*, No. 11-11988, 2014 U.S. Dist. LEXIS 197872\* (E.D. Mich. June 6, 2014).

**EXHIBIT E:**    *Magnum v. Archdiocese of Phila.*, 253 Fed. App'x 224 (3rd Cir. 2007).

## STATEMENT OF ISSUES PRESENTED

I. ARE PLAINTIFFS' RICO CLAIMS TIME-BARRED?

    DEFENDANT ANSWERS:         YES.
    PLAINTIFFS ANSWER:         NO.

II. DOES PLAINTIFFS' COMPLAINT FAIL TO PLEAD FACTS SHOWING THE CONDUCT OF AN ENTERPRISE?

    DEFENDANT ANSWERS:         YES.
    PLAINTIFFS ANSWER:         NO.

III. DOES PLAINTIFFS' COMPLAINT FAIL TO SATISFY THE "DISTINCTNESS" REQUIREMENT?

    DEFENDANT ANSWERS:         YES.
    PLAINTIFFS ANSWER:         NO.

IV. DOES PLAINTIFFS' COMPLAINT FAIL TO PLAUSIBLY ALLEGE A § 1962(D) VIOLATION?

    DEFENDANT ANSWERS:         YES.
    PLAINTIFFS ANSWER:         NO.

V. HAVE PLAINTIFFS FAILED TO PLEAD COMMON LAW FRAUD?

    DEFENDANT ANSWERS:         YES.
    PLAINTIFFS ANSWER:         NO.

VI. HAVE PLAINTIFFS FAILED TO STATE A CLAIM FOR CIVIL CONSPIRACY?

    DEFENDANT ANSWERS:         YES.
    PLAINTIFFS ANSWER:         NO.

VII.  HAVE PLAINTIFFS FAILED TO PLEAD A CLAIM FOR "PAYMENT UNDER MISTAKE OF FACT"?

DEFENDANT ANSWERS:                 YES.
PLAINTIFFS ANSWER:                 NO.

VIII. HAVE PLAINTIFFS FAILED TO PLEAD A CLAIM FOR UNJUST ENRICHMENT?

DEFENDANT ANSWERS:                 YES.
PLAINTIFFS ANSWER:                 NO.

IX. SHOULD PLAINTIFFS' REQUEST FOR DECLARATORY JUDGMENT BE DISMISSED?

DEFENDANT ANSWERS:                 YES.
PLAINTIFFS ANSWER:                 NO.

X. SHOULD CERTAIN ALLEGATIONS IN THE COMPLAINT BE STRICKEN?

DEFENDANT ANSWERS:                 YES.
PLAINTIFFS ANSWER:                 NO.

## CONTROLLING/APPROPRIATE AUTHORITY FOR RELIEF SOUGHT

### A. Motion to Dismiss

Federal Rule of Civil Procedure 12(b)(6)  allows a court to dismiss a Complaint for "failure to state a claim upon which relief can be granted." In evaluating a motion to dismiss pursuant to Rule 12(b)(6), "[c]ourts must construe the Complaint in the light most favorable to plaintiff, accept all well-plead factual allegations as true, and determine whether the Complaint states a plausible claim for relief." *Albrecht v. Treon*, 617 F.3d 890, 893 (6th Cir. 2010) (internal quotation marks omitted). To survive a motion to dismiss, a Complaint must plead specific factual allegations, and not just legal conclusions, in support of each claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-679 (2009). A Complaint will be dismissed unless, when all well-plead factual allegations are accepted as true, the Complaint states a "plausible claim for relief.'" *Id.* at 679. In ruling on a Rule 12(b)(6) motion, a court may consider the Complaint, documents incorporated by reference and central to the claims, exhibits attached to the Complaint, and matters of which a court may take judicial notice. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *Amini v. Oberlin College*, 259 F.3d 493, 502-503 (6th Cir. 2001).

When considering a motion to dismiss, however, courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986) (quoted in *Melton v. Blankenship*, 2009 U.S. App. LEXIS 686

(6th Cir. 2009) (affirming motion to dismiss RICO claim for failing to allege recognized predicate act)).

The sufficiency of Plaintiff's claims for mail and wire fraud must be analyzed pursuant to the requirements set forth in Fed. R. Civ. P. 9(b). Rule 9(b) states that claims of fraud "must state with particularity the circumstances constituting [the] fraud." The particularity requirement has been interpreted to mean that a plaintiff must alleged at a minimum, "the time, place, and content of the alleged misrepresentation…; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud." *Coffey v. Foamex L.P.*, 2 F.3d 157, 162 (6th Cir. 1993). The Complaint must also "identify the speaker," and "explain why the statements were fraudulent." *Frank v. Dana Corp.*, 547 F.3d 564, 570 (6th Cir. 2008). Moreover, "allegations of fraudulent misrepresentation must be made with sufficient particularity and with a sufficient factual basis to support an inference that they were knowingly made." *Advocacy Org. for Patients and Providers v. Auto Club Inc. Assoc.*, 176 F.3d 315, 322. (6th Cir. 1999). "Vague allegations of generic misrepresentations or omissions are not sufficient to survive a Rule 12(b)(6) challenge." *William Beaumont Hosp. Sys. v. Morgan Stanley & Co., LLC*, 677 Fed. Appx. 979, 983 (6th Cir. 2017).

**B. Motion to Strike**

Under Federal Rule of Civil Procedure 12(f), the court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." A matter is "impertinent" or "immaterial" when it is not relevant to the issues involved in the action, and "[t]he word 'scandalous' in Rule 12(f) generally refers to any allegation that unnecessarily reflects the moral character of an individual or states anything in repulsive language that detracts from the dignity of the court." See *Llewellyn-Jones v. Metro Prop. Grp. LLC*, 22 F.Supp.3d 760, 776 (E.D. Mich. 2014) (citation and internal quotation marks omitted). Although motions to strike are disfavored, "the function of the motion is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with them early in the case." *Operating Eng'rs Local 324 Health Care Plan v. G&W Constr. Co.*, 783 F.3d 1045, 1050 (6th Cir. 2015) (citation and internal quotation marks omitted).

The United States District Court for the Eastern District of Michigan has further explained that the court "should not strike a matter unless the court can confidently conclude that the portion of the pleading to which the motion is addressed is redundant or is both irrelevant to the subject matter of the litigation and prejudicial to the objecting party." *Allstate Ins. Co. v. OMIC* No. 17-13908, 2018 U.S. Dist. LEXIS 230296, *7 (E.D. Mich. Sept. 24, 2018) (**Exhibit A**).

# I.  <u>STATEMENT OF FACTS</u>

According to Allstate's 210 page, 560 paragraph, Complaint, "[t]his case is about a surgical hospital, medical clinics, an intraoperative neuromonitoring ("IONM") provider, and the physicians, owners, managers, agents, and representatives of the same who engaged in a scheme to defraud Allstate by submitting and causing to be submitted false and fraudulent records, bills, and invoices…seeking to collect payment from Allstate for treatment and services that were not actually performed, were medically unnecessary, were fraudulently billed, and were not lawfully rendered pursuant to applicable statutes and regulations, including the Michigan No-Fault Act, Mich. Comp. Law § 500.3101, *et seq.*" (**ECF No. 1, PageID.2, ¶ 1**). Allstate also pleads that this case involves submissions to Allstate by Defendants through Health Insurance Claim Forms on behalf of the insureds. (**ECF No. 1, PageID.63, ¶ 309**).

Allstate admits that "[p]ursuant to the Michigan No-Fault Act, an insurer is liable to pay benefits only for reasonable and necessary expenses for lawfully rendered treatment arising out of a motor vehicle accident." (**ECF No. 1, PageID.109, ¶ 552**). However, Allstate claims that services billed by Defendants "were not necessary and were not lawfully rendered, were fraudulently billed, and were billed at excessive and unreasonable amounts." (**ECF No. 1, PageID.84, ¶ 415**). Allstate claims that "each claim for payment (and accompanying medical

records) under Michigan's No-Fault Act…constitue[d] a misrepresentation because the treatment underlying the claim was not lawful and medically necessary, as it must be in order to be compensable under Michigan law." (**ECF No. 1, PageID.81, ¶ 402**). Therefore, Allstate argues that it "is not required to pay the defendants for treatment that was medically unnecessary, and is entitled to the return of money paid…" (**ECF No. 1, PageID.42, ¶ 202**). Allstate also seeks Declaratory Relief to that effect. (**ECF No. 1, PageID.109**).

In summary, Allstate alleges it is entitled to actual and consequential damages, and treble damages pursuant to the RICO statute. Allstate also seeks a Declaratory Judgment blanketly declaring that it is not obligated to pay pending and previously-denied insurance claims submitted by Defendants; that Defendants cannot seek payment from Allstate pursuant to the Michigan No-Fault Act, any policy of insurance, any assignment of benefits, any lien of any nature, or any other claim for payment related to the conduct detailed in the Complaint; and that Defendants cannot balance bill or otherwise seek payment from any person insured under an Allstate policy or for whom Allstate is the responsible payor related to the conduct detailed in the Complaint.

This is one of many such RICO actions Allstate has filed in the Eastern District of Michigan against medical providers for over a decade.

## II. LEGAL ARGUMENT

### A. Plaintiff's Claims are Barred by the Statute of Limitations

Civil RICO claims are subject to a four-year statute of limitations. The limitations period begins to run when a party knew, or through exercise of reasonable diligence should have discovered, that the party was injured by a RICO violation. Allstate's Complaint was filed on July 22, 2022. Nevertheless, Allstate claims damages from alleged occurrences of fraud dating back to 2015. At the latest, Allstate's claims accrued four-years prior to the date of filing, i.e., July 22, 2018. Therefore, Allstate's claims should be limited to damages allegedly occurring after that date.

### 1. The "Injury Discovery" Rule Governs Civil RICO Claims

Civil RICO claims are subject to a four-year statute of limitations, even when the predicate acts sound in fraud. See *Rotella v. Wood*, 528 U.S. 549 (2000).

In *Rotella*, the Supreme Court rejected the "last predicate act" rule, and "injury and pattern discovery" rule with respect to the start of the limitations period in civil RICO cases. 528 U.S. 549, 554-558. Thus, the "injury discovery" rule was the only one left standing in the wake of the *Rotella* decision.

Although *Rotella* endorses some version of an injury-based accrual rule, the Supreme Court has never answered whether that four-year period accrues upon the

occurrence of an injury or upon some variation of the discovery of an injury.[1] The Sixth Circuit has applied (albeit in unpublished opinions) the "injury discovery" accrual rule to civil RICO claims. *Sims v. Ohio Cas. Ins. Co.*, 151 F. App'x 433, 435 (6th Cir. 2005) ("The four-year period begins to run when a party knew, or through exercise of reasonable diligence should have discovered, that the party was injured by a RICO violation.") (**Exhibit B**); *Taylor Grp. V. ANR Storage Co.*, 24 F. App'x 319, 325 (6th Cir. 2001) ("The limitations for RICO claims accrues when a plaintiff knew or should have known of an injury.") (**Exhibit C**); *Uselman v. Razvan Pop*, 495 F. Supp. 3d 528, 534 (E.D. Mich. 2020) (same).

In *Sims*, the Sixth Circuit held that "the running of the statute of limitations begins when a plaintiff is put on inquiry notice – that is, when the plaintiff has been presented with evidence suggesting the possibility of fraud." 151 F. App'x at 436, quoting *Isaak v. Trumbull Sav. & Loan Co.*, 169 F.3d 390, 399 (6th Cir. 1999). "A plaintiff need only be aware of 'storm warnings' but does not need to 'hear thunder and see lightning.'" *Id.* "Inquiry notice is triggered by evidence of the possibility of fraud, not full exposition of the scam itself." *Isaak*, 169 F.3d at 399 (citation omitted). "The plaintiff need only possess a low level of awareness; he need not fully

---

[1] In footnote 2 of *Rotella*, the Supreme Court noted that it had not settled on a final rule. "In addition to the possibilities entertained by the Courts of Appeals, JUSTICE SCALIA has espoused an "injury occurrence" rule, under which discovery would be irrelevant, and our decision in *Klehr* leaves open the possibility of a straight injury occurrence rule." 528 U.S. at 555 n.2. (internal citation omitted).

learn of the alleged wrongdoing." *Id.*

Other Circuit Courts have similarly likened inquiry notice to "storm warnings" of possible fraud that trigger a plaintiff's duty to investigate in a reasonably diligent manner. See *Cooperative de Ahorro y Credito Aguada v. Kidder, Peabody & Co.*, 129 F.3d 222, 224 (1st Cir. 1997); *Great Rivers Coop. v. Farmland Indus., Inc.*, 120 F.3d 893, 896 (8th Cir. 1997). In *Cooperativo de Ahorro*, the First Circuit stated that it "need not decide whether the statute of limitations begins to run on the date the storm warnings appear or the later date on which an inquiring investor would through reasonable diligence have discovered the fraud. The time between the two dates in most cases is not long enough to affect the outcome." 129 F.3d at 225 (quoted in *Isaak*, 169 F.3d at 399).

2. <u>Allstate Admits it Failed to Make a Timely Inquiry</u>

At the outset, it is important to point out that Allstate's Complaint is based on an inapplicable discovery accrual rule.

> 409. Evidence of the fraudulent scheme detailed in this Complaint was not **discovered until after patterns had emerged** and Allstate began to investigate the defendants, revealing the true nature and scope of their fraudulent scheme.

(**ECF No. 1, PageID.83**) (emphasis supplied)

> 410. Due to the defendants' material misrepresentations and other affirmative acts designed to conceal their **fraudulent scheme**, Allstate did not and could not have discovered that its damages were attributable to fraud until

shortly before it filed this Complaint.

(**ECF No. 1, PageID.83**) (emphasis added)

Thus, Allstate is claiming that the "injury and pattern discovery" rule governs this case. As explained above, however, the Supreme Court specifically rejected this rule in *Rotella, supra.*

Significantly, Allstate admits in Paragraph 409 that it did not begin its investigation into Defendants' allegedly fraudulent scheme until *after* "patterns had emerged." But "[i]nquiry notice is triggered by evidence of the possibility of fraud, not full exposition of the scam itself." *Isaak*, 169 F.3d at 399. Allstate admits that it was in possession of scores of allegedly fraudulent billings as early as 2015 (see subsection 3, below). Thus, Allstate was on "inquiry notice" at that time. "The plaintiff need only possess a low level of awareness; he need not fully learn of the alleged wrongdoing." *Isaak*, 169 F.3d at 399 (citation omitted).

Allstate admits that it did not begin investigating until it noticed "patterns" of a scheme after which it "discovered" that its damages were attributable to fraud only shortly before filing its Complaint.[2] But, because Allstate also admits being in possession of allegedly fraudulent billings from Defendants as early as 2015, the Complaint, filed some seven (7) years later, is clearly outside the four-year statute

---

[2] It should be noted that Defendant SE MI Hospital denies any fraudulent billing or scheme to defraud. Nevertheless, for limitations purposes, Plaintiff's admit to being in possession of billings they claim are fraudulent as early as January 2015.

of limitations. "By tying the start of start of the limitations period to a plaintiff's reasonable discovery of a pattern rather than to the point of injury or its reasonable discovery, the rule would extend the potential limitations period for most civil RICO cases well beyond the time when a plaintiff's cause of action is complete…" *Rotella*, 528 U.S. at 558.

In sum, Allstate's Complaint was filed on July 22, 2022. Based on the RICO's four-year statute of limitations, the latest date on which Allstate's claims accrued is July 22, 2018. Thus, Allstate's claims should, at a minimum, be limited to occurrences accruing after that date.

### 3.  Allstate Admits Possession of Evidence It Believes Suggest Fraud

Allstate's Complaint is rampant with allegations of fraudulent billing going back as early as January 2015. In numerous paragraphs of the Complaint, Allstate *admits* to having actual knowledge of the possibility of fraud well before the four-year limitations period. Below are allegations specifically related to Defendant Southeast Michigan Surgical Hospital ("Hospital"):

> 141.   The following are representative examples of the defendants' submission of bills for services that were never actually performed:
>
> a.      SE MI Hospital billed Allstate for facility fees relative to an alleged three-level lumbar procedure by Quiroga to patient T.P. (Claim No 0192811339) on **December 7, 2015**. (**ECF No.1, PageID.26**)
> b.      ***
> c.      SE MI Hospital billed Allstate relative to an alleged

procedure by Hakki on patient D.H. (Claim No. 0436257570) on **March 27, 2018**. (**ECF No. 1, PageID.27**)

d.      ***

e.      SE MI Hospital billed Allstate $14,055.92 for a purported osteopathic manipulation (CPT code 98925) on **July 25, 2017** relative to J.L. (Claim No. 0405023326). (**ECF No. 1, PageID.27**)

f.      ***

g.      SE MI Hospital bill Allstate relative to an alleged procedure on patient K.V. (Claim No. 0475095872) on **January 17, 2018**. (**ECF No. 1, PageID.28**)

h.      ***

i.      SE MI Hospital billed Allstate relative to an alleged procedure by Nouri on patient M.Z. (Claim No. 0431010446) on **June 1, 2017**…(**ECF No. 1, PageID.28**)

195. The following are representative examples of the defendants' submission of bills seeking multiple payments for the same purported services: (**ECF No. 1, PageID.39**)

***

d. SE MI Hospital billed for an alleged procedure by Kapsokavathis to patient K.S. (Claim No. 0440197984) on **November 29, 2017**…(**ECF No. 1, PageID.40**)

***

238. The following are representative examples of improper and medically unnecessary MUA billed by SE MI Hospital:

a.      …C.B. was inexplicably referred to SE MI Hospital…on **January 16, 2018** for alleged MUA of her spine and pelvis…SE MI Hospital billed more than $14,030 for the unnecessary MUA procedure…(**ECF No. 1, PageID.48**)

b.      …SE MI Hospital billed for MUA of E.W.'s spine and pelvis on **April 3, 2018**…(**ECF No. 1, PageID.49**)

8

In addition to the representative paragraphs above, Exhibit 1 of the Complaint purports to show bills submitted by Defendant Hospital that Allstate claims were for services not rendered, that were medically unnecessary (to the extent they were rendered at all), and were unlawful in relation to several Allstate insureds. (**ECF No. 1, PageID.4**). Exhibit 1 has ***approximately 340 entries*** related to bills going back as far as **March 31, 2015**, and before July 22, 2018. (**ECF No. 1-2, PageID.122-147**).

Based on the above, there can be no doubt that Plaintiff was "presented with evidence suggesting the possibility of fraud." *Sims*, 151 F. App'x at 436. This is particularly the case with a sophisticated party like Allstate. Indeed, Allstate and their counsel in the instant matter have filed numerous similar RICO suits in the Eastern District of Michigan against medical providers for over a decade. See, e.g., *Allstate Ins. Co. v. Awan & Assocs. P.C.*, No. 11-11988, 2014 U.S. Dist. LEXIS 197872 *2 (E.D. Mich. June 6, 2014) ("This case has been pending for over three years.") (**Exhibit D**). Thus, Allstate's claim that "Allstate did not and could not have discovered that its damages were attributable to fraud until shortly before it filed this Complaint" strains credulity to the breaking point. (**ECF No. 1, PageID.83**). When considering a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986). Nevertheless, discovery of fraud is not the event which triggers the four – year limitations period. "The plaintiff need only possess a low level of awareness;

9

he need not fully learn of the alleged wrongdoing." *Isaak*, 169 F.3d at 399.

It has been observed that courts usually should not dismiss complaints on statute of limitations grounds when there are disputed factual questions relating to the accrual date. See *Am. Premier Underwriters, Inc. v. AMTRAK*, 839 F.3d 458, 464 (6th Cir. 2016). "But where one can determine from the face of the complaint that the statute of limitations has run, dismissal is appropriate." *Id.*

Here, the Complaint is laden with factual allegations showing that Allstate was in actual possession of facts which it alleges indicate fraud dating back to early 2015, thus triggering the running of the limitations period. Allstate has admitted it did not begin investigating, however, until it recognized so-called "patterns" of fraud. Nevertheless, the limitations period is triggered when a plaintiff possesses "a low level of awareness; he need not fully learn of the alleged wrongdoing." *Isaak*, 169 F.3d at 399 (citation omitted).

Exhibit 6 of the Complaint purports to show the damages Allstate claims against Defendant Hospital. (**ECF No. 1-7, Page ID.196-200**). Allstate claims $2,027,952.84 in damages it alleges it overpaid Defendant Hospital. (**ECF No. 1-7, PageID.200**). Nevertheless, approximately 39 of Allstate's claims are payments allegedly made more than four years prior to the filing of this lawsuit. (**ECF No. 1-7, PageID.197**). As such, these claims fall outside the limitations period. At a minimum, these claims, totaling approximately **$648,776.35**, should be dismissed.

10

**B. Allstate Fails to State a Claim for Violation of the RICO Statute**

The RICO statute makes it unlawful for "any person…associated with any enterprise…to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." 18 U.S.C. § 1962(c). A RICO "person" can be either an individual or a corporation. *West Hills Farms, LLC v. ClassicStar Farms, Inc. (In re ClassicStar Mare Lease Litig.)*, 727 F.3d 473, 490 (6th Cir. 2013) (citing 18 U.S.C. § 1961(3)). Plaintiffs' Civil RICO action against the Hospital must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6), because the Complaint contains no "direct or inferential allegations respecting all the material elements" of a civil violation of the federal RICO statute. *Advocacy Org. v. Auto Club Ins. Ass'n*, 176 F.3d 315, 319 (6th Cir. 1999).

1.  The Complaint Fails to Plead Facts Showing the Conduct of an Enterprise

RICO defines "enterprise" to include "any union or group of individuals associated in fact[.]" 18 U.S.C. § 1961(4). A group qualifies as an association-in-fact if it has "three structural features": a common purpose, that members pursue through coordinated effort, over a period of time long enough to allow them to commit multiple acts of racketeering. *Boyle v. United States*, 556 U.S. 938, 946, 129 S. Ct. 2237, 173 L. Ed. 2d 1265 (2009); see also *West Hills Farms, LLC v. ClassicStar Farms, Inc. (In re ClassicStar Mare Lease Litig.)*, 727 F.3d 473, 490 (6th

Cir. 2013). Importantly, a party cannot be both the defendant "person" and the enterprise. *Davis v. Mut. Life Ins. Co. of New York*, 6 F.3d 367, 377 (6th Cir. 1993).

Plaintiffs' Complaint fails to allege facts showing a common purpose and coordinated effort. Even assuming Allstate's allegations of improper, or incorrect, billing are true, the Complaint fails to allege any facts showing that the Hospital acted with a common purpose and coordinated its efforts with the other Defendants. Allstate does not allege facts identifying the Hospital employee or agent that worked with the other Defendants and non-party physicians for a common purpose. While Allstate does reference a number of instances which it claims as proof of fraudulent billing practices, none of those instances show a common purpose and coordinated effort.

In Paragraph 14 of the Complaint, Allstate alleges that "At all times relevant, SE MI Hospital was operated and conducted by defendants J. Alan Robertson, M.D., P.C. ("Robertson, P.C."), Martin Quiroga, P.C. ("Quiroga, P.C."), Comprehensive Neuromonitoring, LLC, ("Comprehensive Neuromonitoring"), J. Alan Robertson, M.D. ("Robertson"), Martin Quiroga D.O. ("Quiroga"), and Sidney Broder, M.D. ("Broder")." (**ECF No. 1, Page ID.4**). But this allegation fails to describe how the Hospital was "operated" by the other Defendants. The Complaint fails to allege facts showing that Defendant Hospital *operated* the enterprise, and likewise fails to describe how the Hospital *was operated by* the Defendants.

12

Furthermore, the Complaint lists the owners-in-fact of Defendant Hosptial – IINN Holdings, JSCE Holdings, and Dr. Jawad Shah – but the Compliant does not allege that they have operational control of the Hospital. (**ECF No. 1, Page ID.3**). Notably, the Complaint alleges that the listed owners control all of the Hospital's membership, yet they are not named as Defendants in the allegedly fraudulent scheme.

Moreover, the Complaint only makes conclusory allegations regarding the operation of an enterprise. For example, in Paragraph 42 Allstate alleges that "[t]he scheme to defraud detailed herein was primarily driven by SE MI Hospital, a facility that recruited physicians to bill for medically unnecessary and excessive procedures so that it could submit exorbitant facility fees to Allstate." (**ECF No.1, Page ID.8**). Paragraph 45 alleges that "SE MI Hospital ensured that unnecessary procedures would be performed at its facility (to the extent they were performed at all), by intentionally associating with unscrupulous medical providers who have lengthy histories of billing for medically unnecessary and inappropriate patient care." (**ECF No. 1, Page ID.8-9**). The Complaint then contains a myriad of allegations of bad acts committed by Defendant physicians, as well as nonparties, which have no relevance to an alleged billing scheme or RICO elements. (**ECF No.1 Page ID.9-13**). Allstate concludes that "[i]t is not coincidental that SE MI Hospital associated with these physicians with extensive disciplinary and criminal histories; these

physicians have compromised practices and limited opportunities to practice in traditional and legitimate hospital settings, and therefore were intentionally targeted by the defendants to generate false and improper bills for submission to Allstate." (**ECF No.1 Page ID.9-13**). There are no facts alleged to show how the Hospital "intentionally targeted" physicians to generate false bills.

Allstate also alleges that "SE MI Hospital intentionally worked with physicians, including the defendant physicians named herein, to generate massive charges for services that were not performed, were double- and triple-billed, were medically unnecessary, were fraudulently unbundled and upcoded, and were charged at outrageous amounts that had no reasonable basis." (**ECF No.1 PageID.17**). Again, no facts are provided to show how the Hospital "worked with physicians" to "generate massive charges." Allstate further alleges that "[b]y encouraging excessive and unnecessary procedures to be performed in its facility, SE MI Hospital was then able to submit exorbitant charges for facility fees." *Id*. Again, no facts are contained in the Complaint to show how the Hospital encouraged these procedures.

The Complaint purports to contain examples of billing for services that were never performed. For example, Allstate alleges that the Hospital "billed Allstate for facility fees relative to an alleged three-level lumbar procedure by Quiroga to patient T.P. (Claim No. 0192811339) on December 7, 2015. However, only a two-level

14

procedure was performed." (**ECF No. 1, Page ID.26**). Allstate also alleges that "every bill submitted SE MI Hospital for facility fees associated with alleged procedures included multiple charges for the same purported services." (**ECF No. 1, Page ID.30**).

Allstate also alleges that "defendants' goal was to bill for as much treatment as possible, regardless of whether such treatment was reasonably necessary to the patients' care, recovery, or rehabilitation, and/or arose out of an alleged motor vehicle accident, in order to generate bills submitted to Allstate." (**ECF No. 1, Page ID.41**). "[D]efendants' treatment violated standards of care in the medical community, as services were not indicated, redundant, excessive, and repeated without any objectively documented benefit to the patient." Id. All of the examples involve a physician's treatment of his/her patient and does not identify a treatment decision made by the Hospital. (**ECF No. 1, Page ID.41-49**).

The Supreme Court has held that liability for "conducting" or "participating in the conduct of" the affairs of an enterprise is limited to persons who exercise a managerial role in the enterprise's affairs. *Reves v. Ernst & Young*, 507 U.S. 170, 178-79 (1993). The Court held that "[i]n order to "participate, directly or indirectly, in the conduct of such enterprise's affairs," one must have some part in directing those affairs." *Id.* at 179. The defendant must also be aware of the enterprise's

conduct and play some role on behalf of the enterprise. *Cruz v. FXDirectDealer, LLC*, 720 F.3d 115, 120-21 (2d Cir. 2013).

In *United Food & Commercial Workers Unions v. Walgreen Co.*, 719 F.3d 849, 853-56 (7th Cir. 2013), the 7th Circuit held that the defendant must operate or manage the enterprise's affairs, not merely its own affairs. *Id.* The court explained that the level of cooperation, however, must arise above the level of cooperation inherent in normal commercial transactions. *Id.* In *United Food*, Walgreens was accused of defrauding insurers by overcharging for certain prescriptions using drugs manufactured by Par Pharmaceutical, the Seventh Circuit concluded that the allegations showed that Walgreens and Par were engaging in their own businesses rather than the business of a joint enterprise. *Id.* Par manufactured the drugs while Walgreens purchased the drugs and filled the prescriptions. *Id.* The court held that "the complaint do not indicate how the cooperation in this case exceeded that inherent in every commercial transaction between a drug manufacturer and pharmacy, and without such an indication, we cannot find a basis for inferring that Walgreens and Par were conducting the enterprise's affairs." *Id.* at 856.

Here, Allstate's Complaint fails to allege any facts showing that the Hospital operated or managed the affairs of the enterprises identified in the Complaint. Allstate fails to allege any facts that the Hospital was aware of the conduct of the enterprise. At most, Allstate identifies facts showing the usual commercial

16

relationship in the treatment of patients (*i.e.* the physician is providing treatment to his/her patient at a hospital setting).

Rule 12(b)(6) requires that a complaint "contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1965 (2007) (internal citation omitted). A "plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id*. Threadbare recitals of all the elements of a cause of action, supported by mere conclusory statements do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009).

In sum, the Complaint fails to contain a short and plain statement of the Allstate's claims regarding the Hospital's involvement in an enterprise with "simple, concise, and direct allegations" as required by Federal Rule of Civil Procedure 8(a)(2) and (d)(1). Consequently, Allstate has failed to plead facts showing a RICO enterprise and Counts I-VIII must be dismissed.

2.  The Complaint Does Not Satisfy the "Distinctness" Requirement for RICO
    Claims

To establish liability under § 1962(c), a plaintiff "must allege and prove the existence of two distinct entities: (1) a 'person'; and (2) an 'enterprise' that is not simply the same 'person' referred to by a different name." *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 161 (2001). And that "person" must have

"conducted or participated in in the conduct of the '*enterprise's* affairs,' not just [its] own affairs." *Reves*, 507 U.S. at 185 (emphasis in original).

This principle is known as the "non-identity" or "distinctness" requirement. *Begala v. PNC Bank, Ohio, N.A.*, 214 F.3d 776, 781 (6th Cir. 2000). "Under RICO, a corporation cannot be both the 'enterprise' and the 'person' conducting or participating in the affairs of that enterprise." *Id.*

In the instant case, Allstate's Complaint so intermingles the RICO "persons" and the RICO "enterprises" as to render them indistinguishable. This serious deficiency violates the "distinctness" requirement for RICO claims.

For example, Count I (Violation of 18 U.S.C. § 1962(c)) of the Complaint alleges that "SE MI Hospital constitutes an enterprise…" (**ECF No. 1, PageID.89**). The Complaint then lists "Robertson, P.C., Quiroga, P.C., Comprehensive Neuromonitoring, Robertson, Quiroga, and Broder" as "Count I defendants." (**ECF No. 1, PageID.89**). Defendant Hospital is absent from Count I. Likewise, Count II (Violation of 18 U.S.C. § 1962(d)) lists the same Defendants as Count I and alleges that they "each agreed to further, facilitate, support, and operate the SE MI Hospital enterprise." (**ECF No. 1, PageID.92**). Defendant Hospital is absent from Count II.

The rest of the Complaint follows the same pattern:

COUNT III
VIOLATION OF 18 U.S.C. § 1962(c)
(Robertson, P.C. Enterprise)
Against Southeast Michigan Surgical Hospital, LLC, Comprehensive

Neuromonitoring, LLC, J. Alan Robertson, M.D., and Sidney Broder, M.D.
(**ECF No. 1, PageID.93**)
\*
COUNT IV
VIOLATION OF 18 U.S.C. § 1962(d)
(Robertson, P.C. Enterprise)
Against Southeast Michigan Surgical Hospital, LLC, Comprehensive
Neuromonitoring, LLC, J. Alan Robertson, M.D., and Sidney Broder, M.D.
(**ECF No. 1, PageID.95**)
\*
COUNT V
VIOLATION OF 18 U.S.C. § 1962(c)
(Quiroga, P.C. Enterprise)
Against Southeast Michigan Surgical Hospital, LLC and Martin Quiroga, D.O.
(**ECF No. 1, PageID.97**)
\*
COUNT VI
VIOLATION OF 18 U.S.C. § 1962(d)
(Quiroga, P.C. Enterprise)
Against Southeast Michigan Surgical Hospital, LLC and Martin Quiroga, D.O.
(**ECF No. 1, PageID.99**)
\*
COUNT VII
VIOLATION OF 18 U.S.C. § 1962(c)
(Comprehensive Neuromonitoring Enterprise)
Against Southeast Michigan Surgical Hospital, LLC, J. Alan Robertson, M.D.,
P.C., J. Alan Robertson, M.D., and Sidney Broder, M.D.
(**ECF No. 1, PageID.100**)
\*
COUNT VIII
VIOLATION OF 18 U.S.C. § 1962(d)
(Comprehensive Neuromonitoring Enterprise)
Against Southeast Michigan Surgical Hospital, LLC, J. Alan Robertson, M.D.,
P.C., J. Alan Robertson, M.D., and Sidney Broder, M.D.
(**ECF No. 1, PageID.102**)

Thus, the Complaint alleges that each corporation is both an "enterprise" *and*

a "person" named as a Defendant with respect to every other "enterprise."

Furthermore, Allstate alleges that the SE MI Hospital "enterprise" was "operated" by all the other parties to the lawsuit. Yet Allstate also claims that Defendant Hospital "operated" all the other "enterprises." See **ECF No. 1, PageID.4, ¶¶ 14, 19, 24, 28, 32, 34, and 36.** "If RICO imposed liability on a corporation for the ordinary conduct of its agents and employees, every claim of corporate fraud would automatically become a violation of RICO." *In re ClassicStar Mare Lease Litig*, 727 F.3d at 490. See also *Afshari v. Mont. Black Gold*, 2020 U.S. App. Lexis 39803, *9 (6th Cir. 2020) (two defendants did not constitute a distinct "person" and "enterprise" because one was a subsidiary of, and owned by, the other) (citing *In re ClassicStar Mare Leasing Litig.*, 727 F.3d at 493).

Although Federal Rule of Civil Procedure 8 establishes a "liberal system of notice pleading," see *E.E.O.C. v J.H. Rough Paking Co.*, 246 F.3d 850, 851 (6th Cir. 2001), "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. 544, 555 (2007). The purpose of allowing alternative pleading is to enable a plaintiff to assert a legal theory that would otherwise be affirmatively negated by another aspect of their pleading. *In re Nissan N. Am. Inc. Odometer Litig.*, 644. F.Supp.2d 873 (D.C. Tenn. 2009).

Here, Allstate is not pleading in the alternative to assert different legal theories, but rather to subvert the "distinctness" requirement for RICO claims.

Allstate cannot have it both ways. Allstate "must allege and prove the existence of two distinct entities: (1) a 'person'; and (2) an 'enterprise' that is not simply the same 'person' referred to by a different name." *Cedric Kushner*, 533 U.S. at 161. When read as a whole, Allstate's Complaint so intermingles the RICO "persons" and the RICO "enterprises" as to render them indistinguishable. *Stratton v. Portfolio Recovery Assocs., LLC*, 770 F3d. 443, 446 (6th Cir. 2014) (a "complaint must be read as a whole.") (quoting, *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 47 (2011)). Thus, the Complaint does not satisfy the "distinctness" requirement of RICO claims and should be dismissed.

3. The Complaint Does Not Plausibly Allege a RICO Conspiracy

Pursuant to 18 U.S.C. § 1962(d), a defendant may be liable for RICO conspiracy if he or she "conspire[s] to violate any of the provisions of subsection (a), (b), or (c) of this section," i.e., the substantive RICO offenses. Section 1962(d) is intended to cover an agreement to violate RICO, not the actual violations themselves. *United States v. Corrado*, 227 F.3d 543, 553-554 (6th Cir. 2000) (Section 1962(d) requires no 'overt act or specific act' in carrying RICO violation forward). A defendant must "intend to further an endeavor which, if completed, would satisfy all of the elements of a substantive criminal offense…" *Workers Union and Employers Midwest Health Benefits Fund v. Walgreen Co.*, 719 F.3d 849, 856 (7th Cir. 2013). Thus, a plaintiff must plausibly allege a meeting of the minds to facilitate

the operation of an enterprise through a pattern of racketeering activity and that particular defendant agreed that someone would commit two predicate acts. *Brouwer v. Raffensperger, Hughes & Co.*, 199 F.3d 961, 967 (7th Cir. 2000). Plausible § 1962(d) allegations are only viable if the underlying RICO allegations are themselves viable. *Efron v. Embassy Suites (Puerto Rico), Inc.*, 223 F.3d 12 (1st Cir. 2000); *Magnum v. Archdiocese of Philadelphia*, 253 Fed. App'x 224 (3rd Cir. 2007) (**Exhibit E**). The partners in the conspiracy must agree to pursue the same objectives. *Salinas v. United States*, 522 U.S. 52, 63 (1997).

Allstate's Complaint does not plausibly allege a violation of § 1962(d) as to Defendant Hospital. There are only conclusory allegations in the Complaint that claim that Defendant Hospital was a party to a meeting of the minds to engage in predicate acts.

Allstate alleges that Defendant Hospital's "members are JSCE Holdings, LLC ('JSCE Holdings') and IINN Holdings, Inc. ('IINN Holdings')." (**ECF No. 1, PageID.3, ¶ 11**). The Complaint further alleges that "Jawad Shah, M.D…is the sole member of JSCE Holdings…" (**ECF No. 1, PageID.3, ¶ 12**). However, neither JSCE Holdings, IINN Holdings, nor Dr. Shah are parties to this action. Furthermore, there are no allegations that JSCE Holdings, IINN Holdings, or Dr. Shah conspired with the other parties to this action. And although Allstate vaguely claims that Defendant Hospital was "operated and conducted" by the other Defendants, nowhere

it is alleged that these Defendants were owners, officers, agents, or employees of Defendant Hospital.

Under Michigan Law, "it is well established that corporations can act only through officers and agents." *Altobelli v. Hartmann*, 499 Mich. 284, 884 N.W.2d 537, 543 (Mich. 2016) (internal citation omitted). Because Allstate has failed to allege any facts that a recognized officer of agent of Defendant Hospital conspired with the other Defendants in this action, Allstate has not plausibly alleged a § 1962(d) claim against Defendant Hospital. A naked conclusory assertion that there was an agreement or conspiracy, without sufficiently specific factual allegations supporting the assertion, cannot be enough to pursue a conspiracy claim.

### C. Allstate Fails to Plead Common Law Fraud with the Requisite Particularity

To state a claim for fraud, Plaintiffs must plead the following:

> (1) That defendant made a material representation; (2) that it was false; (3) that when he made it he knew that it was false, or made it recklessly, without any knowledge of its truth, and as a positive assertion; (4) that he made it with the intention that it should be acted upon by Plaintiffs; (5) that Plaintiffs acted in reliance upon it; and (6) that he thereby suffered injury. Each of these facts must be proved with a reasonable degree of certainty, and all of them must be found to exist; the absence of any of them is fatal to a recovery.

*Hi-Way Motor Co. v. Int'l. Harvester Co.*, 398 Mich. 330, 336; 247 N.W.2d 813 (1976) (internal quotations omitted). The pleading requirements of a fraud claim are

set forth in Fed. R. Civ. P. 9(b), which require a party alleging fraud to "state with particularity the circumstances constituting fraud." Plaintiff does not allege fraud with the requisite particularity. Fed. R. Civ. P. 9(b) requires Plaintiff to "state with particularity the circumstances constituting fraud." The Sixth Circuit has further interpreted Rule 9(b) to "require that a plaintiff allege the time, place, and content of the alleged misrepresentations on which he or she relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud." *Sanderson v. HCA-The Healthcare Co*., 447 F.3d 873, 877 (6th Cir. 2006) (citation omitted); *Frank v. Dana Corp.*, 547 F.3d 564, 569-70 (6th Cir. 2008) (internal citations omitted). Fraud claims that do not meet this standard are subject to dismissal. *Id*.

Here, Allstate asserts vague and conclusory statements. Allstate's lengthy complaint contains allegations that a procedure was unnecessary under the medical standard of care or that a procedure was billed for that did not occur. Allstate does not make a single, specific factual allegation supporting a fraud claim against the Hospital, let alone state (i) the time, place, and contents of the alleged fraudulent statements, (ii) identify who made the statements, (iii) the basis for claiming that Defendants knew the statements were false when made, (iv) the allegedly fraudulent scheme, (v) details regarding the intent to induce Plaintiff to act upon the allegedly fraudulent statements, and (vi) the injury that resulted from the alleged

representations. The Complaint contains instances of what Allstate claims were improperly billed procedures which even if those allegations are true could easily involve the use of an incorrect CPT code by neglect or a mistake. Allstate provides no factual basis for a claim that the Hospital knew a CPT was being used fraudulently rather than by simple user error. Consequently, the count for common law fraud should be dismissed.

### D. Allstate Fails to State a Claim for Civil Conspiracy

In Count X, Allstate alleges a civil conspiracy against the Defendants without any facts to provide a legal basis for her claim. A civil conspiracy is, at its root, "an agreement, or preconceived plan, to do an unlawful act." *Bahr v. Miller Bros Creamery*, 365 Mich. 415, 427, 112 N.W.2d 463 (1961). The elements of a cause of action for civil conspiracy in Michigan are (1) a concerted action (2) by a combination of two or more persons (3) to accomplish a criminal or unlawful purpose or a lawful purpose by criminal or unlawful means, (4) causing damage to the plaintiff. *Fenestra Inc v Gulf American Land Corp*, 377 Mich 565, 593, 141 NW2d 36 (1966). "A civil conspiracy, by itself, is not a cognizable claim but is defined by the tort that constitutes the underlying theory of liability." *Mekani v. Homecoming Financial, LLC*, 752 F. Supp. 2d 785, 2010 WL 2681077 at *5 n. 2 (E.D. Mich 2010) (Borman, J.) (citing *Roche v. Blair*, 305 Mich. 608, 9 N.W.2d 861, 863 (Mich.1943); *see also Battah v. ResMAE Mortgage Corp.*, 746 F. Supp. 2d 869,

2010 WL 4260530 at * 5 (E.D. Mich. 2010) (Rosen, J.) (dismissing civil conspiracy claim where plaintiff failed to state claim for underlying fraud claim).

Here, Allstate has not stated any facts showing that the Hospital made a concerted effort with other parties to accomplish an unlawful purpose. Moreover, Allstate has failed to state a claim for the underlying fraud and the civil conspiracy claim fails as well. Count X must be dismissed.

### E. Allstate Fails to Plead a Claim for "Payment Under Mistake of Fact" Because it Has Not Alleged There is a Contract to Reform

Count XI in the Complaint is for "Payment under Mistake of Fact". Allstate alleges that it paid amounts "misunderstanding, misapprehension, error, fault, or ignorance of material facts, namely, the scheme to defraud Allstate by misrepresenting the fact, lawfulness, and necessity of services billed." Under Michigan law, the remedy for a unilateral mistake is reformation of a contract. *Johnson Family L.P. v. White Pine Wireless, LLC*, 281 Mich. App. 364, 380 ("A court may also, under certain circumstances, reform a contract based on a unilateral mistake. Michigan has long recognized that an agreement may be reformed based on a unilateral mistake."). Allstate's Complaint fails to identify any contracts that should be reformed and seeks damages rather than equitable relief of reformation. ECF No. 1, PageID 117. Consequently, Count XI should be dismissed.

### F. Allstate Fails to Plead a Claim for Unjust Enrichment

"[I]n order to sustain a claim of quantum meruit or unjust enrichment, a plaintiff

must establish (1) the receipt of a benefit by the defendant from the plaintiff and (2) an inequity resulting to the plaintiff because of the retention of the benefit by the defendant." *Morris Pumps v. Centerline Piping, Inc.*, 273 Mich. App. 187; 729 N.W.2d 898, 904 (Mich. App. 2006).  And, under Michigan law, a plaintiff may recover for unjust enrichment where he can establish that (i) the defendant received a benefit from the plaintiff and (ii) an inequity would result if the defendant were permitted to retain the benefit without compensating the plaintiff.  *See Belle Isle Grill Corp v. City of Detroit*, 256 Mich. App. 463, 478; 666 N.W.2d 271 (2003) (citing *Barber v. SMH (US), Inc.*, 202 Mich. App. 366, 375; 509 N.W.2d 791 (1993)). If both elements are established, "the law will imply a contract in order to prevent unjust enrichment." *Id.* (citing *Martin v. East Lansing Sch. Dist.*, 193 Mich. App. 166, 177; 483 N.W.2d 656 (1992)).  But "a contract will be implied only if there is no express contract covering the same subject matter." *Id.*

Allstate's complaint is silent as to whether the Hospital received payment as part of a settlement agreement in connection with a state court No-Fault case or whether the payment was made pursuant to a patient's insurance policy. Under either scenario, there would be an express contract covering the subject matter. Therefore, the unjust enrichment claim fails as a matter of law.

### G. Allstate's Declaratory Judgment Claim Must be Dismissed

The claim for Declaratory Judgment fails and should be dismissed as well. The Declaratory Judgment Act authorizes courts to declare the rights and other legal relations of a party seeking such a declaration, whether or not further relief is or could be sought. 28 U.S.C. § 2201. The Sixth Circuit has held that a declaratory judgment is not an independent cause of action. *Davis v. United States*, 499 F.3d 590, 594 (6th Cir. 2007) . It is merely a procedural device used to vindicate substantive rights, so it hinges on the substantive claims. *Int'l Ass'n of Mach. and Aerospace Workers v. Tenn. Valley Auth.*, 108 F.3d 658, 668 (6th Cir. 1997) (finding claim for declaratory relief time-barred because substantive claims were time-barred). A request for a declaratory judgment should not be considered unless and until the plaintiffs established their right to relief under one of the substantive claims. *In re Rospatch Sec. Litigation*, 760 F. Supp. 1239 (W.D. Mich. 1991). Since Allstate's substantive claims fail, the claim for a declaratory judgment (Count XIII) should also be dismissed.

### H. Many Allegations in the Complaint are Improper and Should be Stricken

Allstate's Complaint is rife with redundant, immaterial, impertinent, and scandalous allegations that should be stricken by this Honorable Court pursuant to Rule 12(f).

Allegations in Paragraphs 45 through 48 all include immaterial and scandalous descriptions which should be stricken. (**ECF No. 1, Page ID.9**). Allstate attempts to link Defendant Hospital to "unscrupulous" medical providers who allegedly were investigated by the FBI, saw patients while under the influence of cocaine, and used cocaine with prostitutes at a medical clinic other than Defendant Hospital's facility. These allegations serve no purpose other than to unfairly prejudice Defendant Hospital.

Similarly, the allegations in Paragraphs 51 through 57 of Allstate's Complaint purport to reference a deleted screenshot from Defendant SE MI Hospital's website. (**ECF No. 1, PageID.10-11**). Allstate makes various statements regarding two individuals, Sam Hakki, D.O. and Labeed Nouri, M.D., and their alleged disciplinary history and criminal convictions. The obvious purpose of these allegations is to link Defendant SE MI Hospital to the alleged misconduct of others, even though Allstate does not claim that Defendant SE MI Hospital had any role in the alleged misdeeds of Hakki and Nouri detailed in the allegations. It is important to note that neither Hakki nor Nouri are parties to this action. Furthermore, none of Allstate's claims at issue in this case appear to involve services provided by these individuals.

Paragraphs 58 through 61 likewise reference an allegedly deleted screenshot from Defendant SE MI Hospital's website. (**ECF No. 1, PageID.11-12**). The screenshot appears to list several individuals including Syed Moosavi, M.D., and

Vincent Rampersaud, M.D., among others. Like the previously discussed paragraphs, the purpose of these is to besmirch Defendant SE MI Hospital by associating it with the unrelated alleged misconduct of others. Once again, neither of these individuals are parties to this case, and there is no allegation that any procedures they allegedly performed are at issue.

Allstate continues with irrelevant and impertinent allegations in Paragraphs 62 through 65 by associating Defendant SE MI Hospital with the alleged misconduct of non-parties Jeffrey Oppenheimer, M.D., and David Jankowski, D.O. (**ECF No. 1, PageID.13**). Allstate vaguely claims that Defendant SE MI Hospital billed for "alleged procedures" performed by these individuals but does not allege that these procedures are at issue in this case.

In Paragraphs 66 and 67 Allstate likewise vaguely claims that "[s]everal of the alleged procedures at issue herein for which SE MI Hospital billed" were performed by "physicians" employed and contracted by Mercyland Health Services, PLLC. (**ECF No. 1, PageID.13-14**). We are left to guess precisely which "physicians" and "procedures" Allstate is talking about. Allstate further contends that "Mercyland was unlawfully organized and operated by a layperson who improperly directed medical care." Allstate does not identify this "layperson." What is clear, however, is that unknown procedures performed by unknown physicians who worked for the unknown owner of a different clinic are irrelevant to the claims

against Defendant SE MI Hospital in this case.

In Paragraphs 68 through 74, Allstate takes the term "attenuated" to new heights. (**ECF No. 1, PageID.14-15**). Allstate claims that non-party Jeffrey Wingate, M.D., "allegedly performed several of the procedures at issue herein" at Defendant SE MI Hospital. Allstate does not identify these alleged procedures. Allstate claims that Wingate "obtained patients through his association with a clinic called Spine & Health." Allstate does not tell us if the patients "obtained" through Spine & Health received any of the "the allegedly performed" procedures at issue. Nevertheless, Allstate claims that Spine & Health was "ostensibly" owned by Dr. William Gonte, who has a disciplinary and criminal history. Allstate then alleges that Spine & Health was *actually* "controlled and operated by a layperson named Hassan Fayad." Apparently, Mr. Fayad has a checkered past.

Of course, none of this sordid tale is relevant to procedures "allegedly" performed by non-party Dr. Wingate (who Allstate does not appear to accuse of wrongdoing) at Defendant SE MI Hospital's facility. Once again, the purpose of the allegations is to unfairly prejudice Defendant SE MI Hospital by attempting to associate it with the alleged misconduct of others.

The opacity and irrelevance of Allstate's allegations continue in Paragraphs 75 through 78. (**ECF No. 1, PageID.15-16**). Allstate claims that other "alleged procedures at issue for which SE MI Hospital billed facility fees were by physicians

who were employed and contracted by a clinic called Vital Community Care, P.C."

Allstate, however, does not reveal the identity of these procedures and physicians.

Allstate says that Vital is owned by Namir Zukkoor, M.D., who has been charged

with several crimes. Furthermore, Allstate claims that Vital obtained patients

through illegal solicitation from "Legal Genius" which was owned by a person who

has pleaded guilty to several crimes.

Once again, allegations of mystery procedures, performed by unknown

doctors, who may have been associated with a different clinic, owned by a person

facing criminal charges, who allegedly obtained patients from another entity with a

convicted owner, are irrelevant, impertinent, and serve no other purpose than to

unfairly prejudice Defendant SE MI Hospital.

In Paragraphs 79 and 80, Allstate clearly states its purpose in making the

specious allegations contained in the previous 28 paragraphs of its Complaint; it is

to smear Defendant SE MI Hospital by linking it to the alleged misconduct of others.

(**ECF No. 1, PageID.16**).

> 79. It is not coincidental that SE MI Hospital associated
> with these physicians with extensive disciplinary and
> criminal histories; these physicians have compromised
> practices and limited opportunities to practice in
> traditional and legitimate hospital settings, and therefore
> were intentionally targeted by the defendants to generate
> false and improper bills for submission to Allstate.

> 80. SE MI Hospital's association with individuals with

32

> criminal and disciplinary histories is not limited to the
> physicians who ordered the purported services for which
> SE MI Hospital billed Allstate.

All of the allegations detailed above are "impertinent" and "immaterial" because they are not relevant to the issues involved in this action. *Llewellyn-Jones v. Metro Prop. Grp., LLC*, 22 F.Supp.3d 760, 776 (E.D. Mich. 2014). Moreover, these allegations are "scandalous" because they improperly attempted to taint the reputation of Defendant SE MI Hospital by connecting it to the alleged bad acts of others. Because these paragraphs are unfairly prejudicial to Defendant SE MI Hospital, they should be stricken. See *Allstate Ins. Co. v. OMIC*, No. 17-13908, 2018 U.S. Dist. LEXIS 230296, *7 (E.D. Mich. Sept. 24, 2018) (**Exhibit A**).

## III. CONCLUSION AND RELIEF REQUESTED

WHEREFORE, Defendant SOUTHEAST MICHIGAN SURGICAL HOSPITAL, L.L.C., respectfully requests that this Honorable Court grant its Motion to Dismiss, dismiss Plaintiff's Complaint against them in its entirety, or in the alternative, grant its Motion to strike, and grant such other and further relief as this court deems just and equitable.

Respectfully submitted,

CHAPMAN LAW GROUP

Dated: October 17, 2022

*/s/ Ronald W. Chapman Sr.*
Ronald W. Chapman Sr., M.P.A.,
LL.M. (P37603)
John C. Cardello (P58082)
Attorneys for Defendant Southeast Michigan
Surgical Hospital, LLC
1441 W. Long Lake Rd., Suite 310
Troy, MI 48098
(248) 644-6326
rchapman@chapmanlawgroup.com
jcardello@chapmanlawgroup.com

## **PROOF OF SERVICE**

I hereby certify that on October 17, 2022, I presented the foregoing paper to the Clerk of the Court for filing and uploading to the ECF system, which will send notification of such filing to the attorneys of record listed herein and I hereby certify that I have mailed by US Postal Service the document to the involved non participants.

*/s/Ronald W. Chapman*
Ronald W. Chapman (P37603)
1441 W. Long Lake Rd., Suite 310
Troy, MI 48098
(248) 644-632
rchapman@chapmanlawgroup.com