UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

ALLSTATE INSURANCE COMPANY;
ALLSTATE FIRE AND CASUALTY
INSURANCE COMPANY; and ALLSTATE
PROPERTY AND CASUALTY
INSURANCE COMPANY,

                          Plaintiffs,

v.

SOUTHEAST MICHIGAN SURGICAL
HOSPITAL, LLC; J. ALAN
ROBERTSON, M.D., P.C.; MARTIN
QUIROGA, P.C.; COMPREHENSIVE
NEUROMONITORING, LLC; J. ALAN
ROBERTSON, M.D.; MARTIN
QUIROGA, D.O.; and SIDNEY
BRODER, M.D.,

                          Defendants.

C.A. No. 2:22-cv-11684-SJM-EAS

## PLAINTIFFS' BRIEF IN OPPOSITION TO DEFENDANT SOUTHEAST MICHIGAN SURGICAL HOSPITAL, LLC'S MOTION TO DISMISS

## **TABLE OF CONTENTS**

Table of Contents ....................................................................................i

Issues Presented ................................................................................... iii

Table of Authorities .............................................................................. v

Brief in Opposition to Defendant Southeast Michigan Hospital's Motion to Dismiss ...................................................................................................1

I.     Introduction ....................................................................................1

II.    Relevant Background .....................................................................3

     A.    Billing for Services Not Rendered ............................................5

     B.    Billing Multiple Times for the Same Service .............................6

     C.    Billing for Unnecessary Medical Treatment, Procedures, and Surgeries........................................................................................7

III.   Discussion.......................................................................................8

     A.    Allstate's RICO Claims Are Not Barred by the Statute of Limitations .....................................................................................8

     B.    Allstate Properly Alleges Conduct of a RICO Enterprise ........14

          1.    The Complaint Properly Alleges RICO Enterprises ......14

          2.    The Complaint Properly Alleges That SE MI Hospital Conducted the RICO Enterprises for Which It Is a Defendant........................................................................16

     C.    The Complaint Satisfies the Distinctness Requirement Necessary to Assert Its 18 U.S.C. § 1962(C) RICO Claims......21

     D.    The Complaint Properly Asserts Claims of RICO Conspiracy Pursuant to 18 U.S.C. § 1962(D)................................................23

E.     Allstate's Complaint Properly Alleges a Claim for Common Law Fraud ........................................................................26

F.     Complaint Properly Alleges a Civil Conspiracy Claim Against SE MI Hospital..........................................................................30

G.     The Complaint States a Claim for Payment Under Mistake of Fact ...................................................................................31

H.     Allstate's Complaint Asserts a Valid Claim for Unjust Enrichment ................................................................................33

I.      Allstate's Claim for Declaratory Relief Pursuant to 28 U.S.C. § 2201 Is Proper ...........................................................34

J.      SE MI Hospital's Motion to Strike Must Be Denied...............35

IV.    Conclusion ................................................................................40

## <u>ISSUES PRESENTED</u>

1. Do Allstate's RICO Claims Survive the Statute of Limitations Defense Raised by Defendant?

   Allstate answers:  Yes

   Defendant answers:  No

2. Does Allstate's Complaint Properly Allege RICO Enterprises?

   Allstate answers:  Yes

   Defendant answers:  No

3. Does Allstate's Complaint Satisfy the "Distinctness" Requirement?

   Allstate answers:  Yes

   Defendant answers:  No

4. Does Allstate's Complaint Properly Allege Claims Under 18 U.S.C. § 1962(D)?

   Allstate answers:  Yes

   Defendant answers:  No

5. Does Allstate's Complaint State a Claim for Common Law Fraud?

   Allstate answers:  Yes

   Defendant answers:  No

6. Does Allstate's Complaint State a Claim for Civil Conspiracy?

   Allstate answers:  Yes

   Defendant answers:  No

7. Does Allstate's Complaint State a Claim for Payment Under Mistake of Fact?

    Allstate answers:  Yes

    Defendant answers:  No

8. Does Allstate's Complaint State a Claim for Unjust Enrichment?

    Allstate answers:  Yes

    Defendant answers:  No

9. Does Allstate's Complaint Properly State a Request for Declaratory Judgment?

    Allstate answers:  Yes

    Defendant answers:  No

10. Should the Court Deny Defendant's Motion to Strike Certain Allegations in the Complaint?

    Allstate answers:  Yes

    Defendant answers:  No

# TABLE OF AUTHORITIES

<u>CASES</u>

<u>Admiral Ins. Co. v Columbia Cas. Ins. Co.</u>
    486 N.W.2d 351 (1992) ..................................................................................30

<u>Agency Holding Corp. v. Malley-Duff & Assocs.</u>
    483 U.S. 143 (1987) ........................................................................................8

<u>Allen v. Andersen Windows, Inc.</u>
    913 F. Supp. 2d 490 (S.D. Ohio 2012) ..........................................................28

<u>Allstate Ins. Co. v. Executive Ambulatory Surgical Center, LLC</u>
    22-cv-11263-GCS-CI, Docket No. 43 (E.D. Mich. Nov. 2, 2022) ........28, 29

<u>Allstate Ins. Co. v. Halima</u>
    2009 U.S. Dist. LEXIS 22443, (E.D.N.Y. Mar. 19, 2009) ...........................11

<u>Allstate Ins. Co. v. Linea Latina De Accidentes, Inc.</u>
    781 F. Supp. 2d 837 (D. Minn. 2011) ............................................................27

<u>Allstate Ins. Co. v. Lyons</u>
    843 F. Supp. 2d 358 (E.D.N.Y. 2012) .....................................................18, 27

<u>Allstate Ins. Co. v. Universal Health Group, Inc.</u>
    13-cv-15108-LVP-EAS, Docket No. 229 (E.D. Mich. March 26, 2015) .....18

<u>Allstate Ins. Co. v. Woodland Avenue Chiropractic Center, P.C.</u>
    16-cv-1177, Docket No. 36 (E.D. Pa. June 16, 2016) ...................................10

<u>Am. Premier Underwriters, Inc. v. AMTRAK</u>
    839 F.3d 458 (6th Cir. 2016) ...........................................................................9

<u>Assocs., Inc. v. American Cash for Gold, LLC</u>
    2009 U.S. Dist. LEXIS 48767 (E.D. Mich. June 10, 2009) ..........................36

<u>Bankers Trust Co. v. Rhoades</u>
    859 F.2d 1096 (2d Cir. 1988) ...................................................................13, 14

Begala v. PNC Bank, Ohio, N.A.
    214 F.3d 776 (6th Cir. 2000))........................................................................22

Bennett v. MIS Corp.
    607 F.3d 1076 (6th Cir. 2010) ..............................................................17, 26

Boyle v. United States
    556 U.S. 938 (2009) ....................................................................................15

Bridge v. Ocwen Fed. Bank, FSB
    681 F.3d 355 (6th Cir. 2012) ......................................................................29

Cedric Kushner Promotions, Ltd. v. King
    533 U.S. 158 (2001)....................................................................................21

Coulthard v. Trott & Trott, P.C.
    2013 U.S. Dist. LEXIS 193971 (E.D. Mich. Nov. 25, 2013) ......................37

Davis v. Romney
    490 F.2d 1360 (3d Cir. 1974) ......................................................................35

Davis v. United States
    499 F.3d 590 (6th Cir. 2007) ......................................................................34

Eifler v. Wilson & Muir Bank & Tr. Co.
    588 F. App'x 473 (6th Cir. 2014) ................................................................29

Egyptian European Pharm. Indus. v. Day
    2021 U.S. Dist. LEXIS 192584 (E.D. Mich. Oct. 6, 2021)............................8

Firestone v. Firestone
    76 F.3d 1205 (D.C. Cir. 1996)......................................................................9

First Capital Asset Mgmt. v. Satinwood, Inc.
    385 F.3d 159 (2d Cir. 2004) .......................................................................15

Foreman v. Foreman
    701 N.W.2d 167 (Mich. App. 2005) ............................................................39

Heinrich v. Waiting Angels Adoption Services
    668 F.3d 393 (6th Cir. 2012) ..........................................................................38

Hillman Health Ctr. of Rochester v. Abbott Labs., Inc.
    782 F.3d 922 (10th Cir. 2015) ..........................................................................9

Holmes v. Parade Place, LLC
    2013 U.S. Dist. LEXIS 143915 (S.D.N.Y. Aug. 5, 2013) .............................8

Int'l Ass'n of Machinists & Aerospace Workers v. TVA
    108 F.3d 658 (6th Cir. 1997) ..........................................................................35

Isaak v. Trumbull Sav. & Loan Co.
    169 F.3d 390 (6th Cir. 1999) ............................................................................8

Johnson Family L.P. v. White Pine Wireless, LLC
    761 N.W.2d 353 (Mich. Ct. App. 2008)..........................................................32

Lares Group, II v. Tobin
    47 F. Supp. 2d 223 (D.R.I. 1999) ...................................................................14

M&D, Inc. v. McConkey
    585 N.W.2d 33 (Mich. 1998) .........................................................................26

McClain v. Coverdell & Co.
    272 F. Supp. 2d 631 (E.D. Mich. 2003) ....................................................3, 28

Michaels Bldg. Co. v. Ameritrust Company, N.A.
    848 F.2d 674 (6th Cir. 1988) ..........................................................................18

Nurse Notes, Inc. v. Allstate Ins. Co.
    2012 U.S. Dist. LEXIS 38059 (E.D. Mich. Mar. 21, 2012)..........................33

Ouwinga v. Benistar 419 Plan Services, Inc.
    694 F.3d 783 (6th Cir. 2012) ..........................................................................19

Parenteau v. Iberia Bank, N.A.
    2013 U.S. Dist. LEXIS 15578 (S.D. Ohio Feb. 5, 2013) ..............................16

<u>Reves v. Ernst & Young</u>
    507 U.S. 170 (1993)................................................................*passim*

<u>Rosenshein v. Jeffrey Meshel</u>
    688 F. App'x 60 (2d Cir. 2017).......................................................8

<u>Rotella v. Wood</u>
    528 U.S. 549 (2000)........................................................................8

<u>Sims v. Ohio Cas. Ins. Co.</u>
    151 F. App'x 433 (6th Cir. 2005)....................................................8

<u>Smith v Rubel</u>
    13 P.2d 1078 (Ore. 1932) ..............................................................31

<u>State Farm Mut. Ins. Co. v. Elite Health Centers, Inc.</u>
    2017 U.S. Dist. LEXIS 30826 (E.D. Mich. Mar. 6, 2017) ........2, 18

<u>State Farm Mut. Auto. Ins. Co. v. Pointe Physical Therapy, LLC</u>
    107 F. Supp. 3d 772 (E.D. Mich. 2015) ......................2, 18, 27, 36

<u>State Farm Mut. Auto. Ins. Co. v. Radden</u>
    2015 U.S. Dist. LEXIS 17788 (E.D. Mich. Feb. 13, 2015) ......2, 18

<u>State Farm Mut. Auto. Ins. Co. v. Stavropolskiy</u>
    2018 U.S. Dist. LEXIS 167425 (E.D. Pa. Sep. 25, 2018) ............12

<u>State Farm Mut. Auto. Ins. Co. v. Universal Health Group, Inc.</u>
    2014 U.S. Dist. LEXIS 151213 (E.D. Mich. Oct. 24, 2014)........33

<u>State Farm Mut. Auto. Ins. Co. v. Vital Community Care, P.C.</u>
    2018 U.S. Dist. LEXIS 80361 (E.D. Mich. May 14, 2018) ......1, 18

<u>State Farm Mut. Auto. Ins. Co. v. Warren Chiropractic & Rehab Clinic P.C.</u>
    2015 U.S. Dist. LEXIS 104332 (E.D. Mich. Aug. 10, 2015) ...2, 18

<u>Travelers Ins. Co. v. Davis</u>
    490 F.2d 536 (3d Cir. 1974) ..........................................................34

<u>Trollinger v. Tyson Foods, Inc.</u>
    2006 U.S. Dist. LEXIS 17448 (E.D. Tenn. Feb. 8, 2006) ...........................13

<u>United Food & Commercial Workers Unions v. Allgreen Co.</u>
    719 F.3d 84 (7th Cir. 2013) ..................................................................21

<u>United States v. Fowler</u>
    535 F.3d 408 (6th Cir. 2008) ..............................................................20

<u>United States v. Rayborn</u>
    495 F.3d 328 (6th Cir. 2007) ..............................................................39

<u>United States v. Winkle</u>
    477 F.3d 407 (6th Cir. 2007) ..............................................................39

<u>Whitlow v. Lewis</u>
    2022 Mich. App. LEXIS 3692 (Mich. Ct. App. June 23, 2022) ..................30

<u>Wilson v. Newman</u>
    617 N.W.2d 318 (Mich. 2000) ......................................................31, 32

<u>Yadlosky v. Grant Thornton, L.L.P.</u>
    120 F. Supp. 2d 622 (E.D. Mich. 2000) ............................................39

<u>Yuhasz v. Brush Wellman, Inc.</u>
    341 F.3d 559 (6th Cir. 2003) ..............................................................17

## R<span style="font-variant: small-caps">ULES</span>

Fed. R. Civ. P. 9 .............................................................................*passim*

Fed. R. Civ. P. 12 ...........................................................................*passim*

## S<span style="font-variant: small-caps">TATUTES</span>

Mich. Comp. Laws § 500.3101, *et seq.* ...............................................4

18 U.S.C. § 1961(4) ........................................................................14

18 U.S.C. § 1962(c) ....................................................................16, 21

18 U.S.C. § 1962(d) ...................................................................................23

18 U.S.C. § 2201  ......................................................................................34

Plaintiffs Allstate Insurance Company, Allstate Fire and Casualty Insurance Company, and Allstate Property and Casualty Insurance Company (collectively, "Allstate") hereby submit the within opposition to defendant Southeast Michigan Surgical Hospital, LLC's ("SE MI Hospital") Motion to Dismiss Allstate's Complaint and in the Alternative to Strike Certain Allegations in the Complaint. *See* ECF No. 41.

# I.   <u>INTRODUCTION</u>

SE MI Hospital admits that this is "one of many" RICO actions filed by Allstate in this District over the past decade (*ECF No. 41, PageID 610*), but does not cite to, distinguish, or otherwise mention at all any of the many decisions holding that Allstate's RICO actions (and similar actions filed by other insurers in this District) are properly pleaded and not subject to dismissal.  This omission is glaring in a District that has developed as thorough a body of caselaw as exists in the Eastern District of Michigan.  Indeed, it has been repeatedly held that the same arguments made by SE MI Hospital in its motion no longer merit close consideration in light of the numerous rulings in favor of insurers like Allstate.  *See, e.g.,* <u>State Farm Mut. Auto. Ins. Co. v. Vital Community Care, P.C.</u>, 2018 U.S. Dist. LEXIS 80361, *19 (E.D. Mich. May 14, 2018) ("This Court finds no reason to spend much time analyzing Defendants' arguments for why State Farm's pleading is insufficient, as these are challenges other defendants have raised unsuccessfully in several similar

1

cases brought by State Farm in which State Farm details the purported fraud scheme in much the same way as it does here"), citing <u>State Farm Mut. Auto. Ins. Co. v. Pointe Physical Therapy, LLC</u>, 107 F. Supp. 3d 772, 784-791 (E.D. Mich. 2015); <u>State Farm Mut. Ins. Co. v. Elite Health Centers, Inc.</u>, 2017 U.S. Dist. LEXIS 30826, *7 (E.D. Mich. Mar. 6, 2017) ("Numerous courts have similarly concluded that such documentation and explanation of the fraudulent scheme . . . satisfies Rule 9(b)"); <u>State Farm Mut. Auto. Ins. Co. v. Radden</u>, 2015 U.S. Dist. LEXIS 17788, *4 (E.D. Mich. Feb. 13, 2015) ("Courts in this district have repeatedly held that complaints with these details satisfy Rule 9(b)"); <u>State Farm Mut. Auto. Ins. Co. v. Warren Chiropractic & Rehab Clinic P.C.</u>, 2015 U.S. Dist. LEXIS 104332, *21 (E.D. Mich. Aug. 10, 2015) ("Numerous courts have concluded that such documentation and explanation of the fraudulent scheme satisfies Rule 9(b), because it sufficiently puts the defendants on notice of the claims against which they will have to defend").  SE MI Hospital's arguments are merely retreads of the same arguments that have been rejected over and over again by courts in this District, which assumedly is the reason that not a single one of the cases listed above is cited by its motion.

In addition to ignoring the well-settled caselaw in this District holding that Allstate's Complaint is proper as pleaded, SE MI Hospital's arguments for dismissal are improper because they consist of (1) conclusory assertions that Allstate's Complaint (*ECF No. 1*) does not satisfy a legal requirement without any analysis or

explanation, (2) references to particular paragraphs, often introductory or summary paragraphs, to assert that the Complaint is vague or lacks specificity, and (3) ignoring the multitude of specific allegations and dozens of examples in the Complaint that directly disprove each alleged inadequacy. The motion to dismiss consistently fails to address the actual scheme to defraud and specific examples alleged by the Complaint, which is directly contrary to a proper motion to dismiss. Indeed, federal courts have condemned the practice of RICO defendants ignoring the entire slate of allegations against them in order to propound dubious dismissal arguments: "The Defendants are characterizing Plaintiff's claim too narrowly by quoting one or two phrases from the Complaint and then concluding that those small portions are Plaintiff's entire case." McClain v. Coverdell & Co., 272 F. Supp. 2d 631, 638 (E.D. Mich. 2003) (denying defendants' motion to dismiss RICO claims). SE MI Hospital is guilty of the same transgression.

## II.   **RELEVANT BACKGROUND**

Allstate's Complaint describes an extensive scheme to defraud Allstate by SE MI Hospital and its co-defendants J. Alan Robertson, M.D., P.C. ("Robertson P.C."), Martin Quiroga, P.C. ("Quiroga P.C."), Comprehensive Neuromonitoring, LLC ("Comprehensive Neuromonitoring"), J. Alan Robertson, M.D. ("Robertson"), Martin Quiroga, D.O. ("Quiroga"), and Sidney Broder, M.D. ("Broder") through which they submitted bills to Allstate for payments under the Michigan No-Fault

Act, Mich. Comp. Laws § 500.3101, *et seq*., to which they were not entitled. *See* ECF No. 1.

The Complaint details SE MI Hospital's role in the fraudulent scheme, and describes how the scheme was driven and enabled by SE MI Hospital's practice of recruiting physicians to bill for medically unnecessary and excessive procedures so that SE MI Hospital could submit exorbitant facility fees to Allstate. Id. at ¶¶ 42, 43. In particular, SE MI Hospital targeted medical providers who have lengthy histories of billing for medically unnecessary and inappropriate patient care. Id. at ¶ 45. To support this allegation, the Complaint identifies no fewer than eight (8) such physicians and three (3) different medical clinics (in addition to the three (3) medical clinics named as co-defendants in this case) that SE MI Hospital selected to provide services at its facility and explains the fraudulent, criminal, and disciplinary history of each. Id. at ¶¶ 46-79.

The fraudulent scheme perpetrated by the defendants was designed to, and did, deceive Allstate by inducing it to pay bills submitted by each of the defendants for payments they were not entitled to receive and were part of a deliberate fraudulent scheme that the defendants agreed to pursue together. Id. at ¶¶ 2-3, 41, 43-45, 84, 88, 215, 239, 289, 410-411, 415, 432, 433. The defendants' fraud resulted in payments from Allstate in excess of $2,397,960. Id. at ¶¶ 436-444 and Exhibits 6 through 9. SE MI Hospital implemented the scheme through a number of specific

activities detailed in the Complaint, and that it carried out in coordination with its co-defendants, including the examples summarized below.

### A.   BILLING FOR SERVICES NOT RENDERED

SE MI Hospital and its co-defendants regularly submitted bills to Allstate seeking payment for treatment and services that were never rendered.  Id. at ¶ 89. One way SE MI Hospital did this was by submitting bills for procedures that were different than or in addition to the procedures that were described in operative reports.  Id. at ¶ 94.  The Complaint details specific instances of this fraudulent practice, such as purported discectomy procedures on patient T.H. (Claim No. 0486448020)[1] on December 17, 2018 and June 17, 2019 that were billed by both defendants SE MI Hospital and Quiroga, P.C. as open incision procedures, but were actually only minimally-invasive needle-based procedures, because billing the procedures as open incision allowed them to bill amounts many times higher than the procedure that was actually performed.  Id. at ¶¶ 98-99.  Additional instances of billing for services not rendered also are detailed in the Complaint. *See, e.g.,* id. at ¶¶ 95, 100-103, 141(a)-(l).

---

[1] To protect the confidentiality of the patients at issue, Allstate's pleadings refer to them by initials and Allstate claim number.  The defendants have these claim numbers, as the defendants always include the claim numbers on the bills mailed and faxed to Allstate.

**B.     BILLING MULTIPLE TIMES FOR THE SAME SERVICE**

SE MI Hospital and its co-defendants also routinely billed Allstate multiple times for the same purported services, which is an improper and fraudulent practice. Id. at ¶ 143.  One way SE MI Hospital did this was by billing facility fees using current procedural terminology ("CPT")[2] codes it selected for procedures and also billing for individual components of the procedures, such as drugs, supplies, and ancillary services, even though the CPT codes for the procedures are inclusive of those components.  Id. at ¶¶ 144-152.  Allstate's Complaint includes specific examples of this practice, such as an occasion where SE MI Hospital billed Allstate $137,171.98 in facility fees related to a purported spine-fusion surgery to patient D.M. (Claim No. 0599301140) on March 4, 2022, which included double- and triple-billing for already included components of the facility fees it charged for six (6) separate procedure codes.  Id. at ¶¶ 153-154.  The Complaint also includes several additional specific examples of multiple billing by SE MI Hospital.  Id. at ¶¶ 149-151, 155-164, 195.

---

[2] As discussed in Allstate's Complaint, CPT codes are published annually by the American Medical Association ("AMA") to facilitate the efficient processing of healthcare charges by insurance carriers and other private and governmental healthcare payors. *See* ECF No. 1, PageID 19 n.1.

### C.   BILLING FOR UNNECESSARY MEDICAL TREATMENT, PROCEDURES, AND SURGERIES

SE MI Hospital and its co-defendants also billed for surgeries and procedures that were not medically necessary and that violated medical standards of care solely to generate charges to Allstate. Id. at ¶¶ 196-198, 204. Allstate's Complaint again provides numerous examples to support its allegations. One such example involves patient T.H. (Claim No. 0433796777) who was evaluated at Spine & Health, PLLC (one of the facilities identified as having a history of fraud by the Complaint) on April 9, 2019, at which it was reported that she had "no radiation into extremities," had attempted a lumbar epidural steroid injection with limited improvement, and had not had any electrodiagnostic testing. Id. at ¶¶ 218-219. SE MI Hospital billed for surgeries to T.H. a week later, on April 16, 2019, and again on April 22, 2019. Id. at ¶ 220. The purported diagnosis of T.H. that sought to justify the surgery was left-sided radiculopathy, a diagnosis that had never been confirmed, was not subjectively reported, and was contradicted by the April 9 evaluation report. Id. at ¶¶ 221-222. As with each of the other categories of fraud identified, the Complaint includes numerous additional specific examples of SE MI Hospital billing for unnecessary medical treatment. Id. at ¶¶ 215-217, 226-238, 300-305.

## III.    DISCUSSION

### A.    ALLSTATE'S RICO CLAIMS ARE NOT BARRED BY THE STATUTE OF LIMITATIONS

RICO claims are subject to a four-year statute of limitations.  Agency Holding Corp. v. Malley-Duff & Assocs., 483 U.S. 143, 156 (1987).  "The four-year period begins to run when a party knew, or through exercise of reasonable diligence should have discovered, that the party was injured by a RICO violation."  Sims v. Ohio Cas. Ins. Co., 151 F. App'x 433, 435 (6th Cir. 2005), citing Rotella v. Wood, 528 U.S. 549, 553-555 (2000).  "A RICO injury occurs when the 'amount of damages becomes clear and definite.'"  Rosenshein v. Jeffrey Meshel, 688 F. App'x 60, 62 (2d Cir. 2017), quoting First Nationwide Bank v. Gelt Funding Corp., 27 F.3d 763, 768 (2d Cir. 1994).  In RICO and fraud actions, this discovery standard is referred to as "inquiry notice – that is, when the plaintiff has been presented with evidence suggesting the possibility of fraud."  Sims, 151 Fed. App'x at 436, quoting Isaak v. Trumbull Sav. & Loan Co., 169 F.3d 390, 399 (6th Cir. 1999).  For purposes of a RICO claim's statute of limitations, it is "the defendant's burden to establish inquiry notice, and this burden is a 'heavy' one."  Holmes v. Parade Place, LLC, 2013 U.S. Dist. LEXIS 143915, *22 (S.D.N.Y. Aug. 5, 2013).

It is rarely appropriate for a court to find a claim barred on statute of limitations grounds on a Fed. R. Civ. P. 12(b)(6) motion.  *See, e.g.,* Egyptian European Pharm. Indus. v. Day, 2021 U.S. Dist. LEXIS 192584, *11 (E.D. Mich.

8

Oct. 6, 2021) ("The statute of limitations is an affirmative defense, and a plaintiff generally need not plead the lack of affirmative defenses to state a valid claim. 'For this reason, a motion under Rule 12(b)(6), which considers only the allegations in the complaint, is generally an inappropriate vehicle for dismissing a claim based upon the statute of limitations'") (internal citations omitted). "Courts should not dismiss complaints on statute-of-limitations grounds when there are disputed factual questions relating to the accrual date." Am. Premier Underwriters, Inc. v. AMTRAK, 839 F.3d 458, 464 (6th Cir. 2016). "Examples of such disputed factual questions include claims that the defendant fraudulently concealed facts, thereby preventing the plaintiff from learning of its injury, and complex issues about whether information in the plaintiff's possession sufficed to alert it of the claim." Id., citing Firestone v. Firestone, 76 F.3d 1205, 1209-1210 (D.C. Cir. 1996) and Sidney Hillman Health Ctr. of Rochester v. Abbott Labs., Inc., 782 F.3d 922, 928 (10th Cir. 2015).

Despite bearing the burden of establishing that Allstate had "inquiry notice" sufficient to trigger the statute of limitations period by a date that would bar claims in this case, SE MI Hospital never explains when, how, or why Allstate was on inquiry notice as to its potential claims against SE MI Hospital. This failure is particularly remarkable since Allstate's Complaint clearly alleges that the defendants sought to disguise and hide their fraud from Allstate, and that Allstate

did not and could not discover that it was injured by the defendants' fraudulent scheme until shortly before this action was filed (*ECF No. 1, ¶¶ 199, 203, 399, 407-410*), making an analysis of the date the cause of action accrued critical to any challenge to the timeliness of Allstate's filing.

Instead of explaining what it contends is the date that Allstate was on inquiry notice with respect to its fraud, SE MI Hospital simply selects the date that it began sending bills to Allstate in 2015 as the date that the statute of limitations began to run. *See* ECF No. 41, PageID 614. It never explains how the fact of Allstate's receipt of bills alone was sufficient to put Allstate on inquiry notice as to SE MI Hospital's fraud,[3] a position that ignores the actual allegations of the Complaint, including that the bills and documentation submitted by SE MI Hospital and its co-defendants were made to appear proper to induce Allstate to rely on those documents and pay the defendants money to which they were not entitled.[4] *See, e.g.,* ECF No. 1, ¶¶ 203, 392, 399, 406-410.

---

[3] SE MI Hospital's motion refers to thirty-nine (39) payments that Allstate made to SE MI Hospital more than four (4) years before the Complaint was filed that it believes should be time barred (*ECF No. 41, PageID 618*), but if anything the fact that those bills were paid is evidence that Allstate was not aware SE MI Hospital's bills were fraudulent.

[4] Remarkably, SE MI Hospital appears to concede that all of its bills to Allstate were fraudulent, as its position apparently is that its bills were so obviously fraudulent that Allstate should have known of SE MI Hospital's fraud simply from the receipt of those bills. *Compare* Allstate Ins. Co. v. Woodland Avenue Chiropractic Center, P.C., 16-cv-1177, Docket No. 36 (E.D. Pa. June 16, 2016) (noting that defendant's

In other words, the fact that SE MI Hospital's bills were fraudulent was not evident upon receipt and therefore receipt alone could not have put Allstate on inquiry notice as to SE MI Hospital's fraudulent activities sufficient to trigger the running of the statute of limitations period.  Id. at ¶¶ 203, 392, 406-410.  Allstate is an insurer that pays tens of thousands of insurance claims during the ordinary course of its business each year.  When payments are made in response to facially valid claims, Allstate cannot be considered on notice of fraud based solely on receipt of bills; it must also have reason to suspect that the bill is fraudulent.  The difficulty for an insurer in discovering this type of fraudulent scheme has been addressed numerous times by federal courts.  For example, in <u>Allstate Ins. Co. v. Halima</u>, 2009 U.S. Dist. LEXIS 22443, *15 (E.D.N.Y. Mar. 19, 2009), the court held that it "cannot say definitely that an insurance company that receives thousands of insurance claims could not reasonably rely on facially valid claims submitted by a licensed professional corporation and accompanied by reports from licensed physicians."  Only after Allstate received a sufficient number of bills from SE MI Hospital and its

---

argument that Allstate could not have justifiably relied on the defendants' bills and treatment records "[s]urprisingly . . . thus appear[s] to suggest that their records are incredible," and rejecting the defendants' motion to dismiss based on the statute of limitations because the complaint alleged that the "Defendants concealed the fraudulent scheme" and that Allstate "did not discover and could not have discovered that its damages were attributable to fraud until shortly before it filed this Complaint").  The same analysis and result apply here with respect to SE MI Hospital.

co-defendants that patterns[5] began to emerge suggestive of fraud could Allstate possibly be considered on "inquiry notice."

That SE MI Hospital cannot establish as a matter of law that the statute of limitations bars any claims is further illustrated by its clearly factual arguments, including statements that Allstate's allegations (which must be accepted as true) "strain[] credibility" and vague assertions that Allstate is a "sophisticated party." *See* ECF No. 41, PageID 617. The resolution of factual disputes and determinations of "credibility" are not appropriate on a motion to dismiss.

Additional issues of fact making any statute of limitations question improper for resolution via a motion to dismiss are raised by the fact that before Allstate filed its Complaint, Allstate and SE MI Hospital entered into an agreement tolling the statute of limitations applicable to Allstate's claims while the parties attempted to

---

[5] The use of the word "pattern" here and in Allstate's Complaint does not refer to a pattern of racketeering activity as SE MI Hospital argues. *See* ECF No. 41, PageID 613-614. Rather, the emergence of patterns in Allstate's review is what alerted it for the first time to the fact that it had been injured by fraudulent insurance claims (as opposed to claims that could have been the result of "neglect or a mistake," as suggested by SE MI Hospital, id. at PageID 633). Similar fact patterns in other insurer fraud cases have been found to be a proper basis to toll the statute of limitations under the applicable discovery rule. *See, e.g.,* State Farm Mut. Auto. Ins. Co. v. Stavropolskiy, 2018 U.S. Dist. LEXIS 167425, *8 (E.D. Pa. Sep. 25, 2018) (finding that whether the statute of limitations applicable to the plaintiff's fraudulent billing claims was tolled was a question of fact not appropriate for resolution on a motion to dismiss where the plaintiff alleged it discovered the defendants' fraud only once it was "able to identify evidence of the pervasive and fraudulent patterns" of conduct).

resolve their dispute. *See* Exhibits A and B hereto. It is remarkable that SE MI Hospital would argue that Allstate's claims are barred by the statute of limitations without even mentioning this tolling agreement. At a minimum, the agreement creates a separate issue of fact with respect to identifying the date that the statute of limitations applicable to Allstate's causes of action began to run that renders resolution of this issue on a motion to dismiss entirely improper.

Finally, even if it could be said that Allstate was on notice with respect to SE MI Hospital's fraud as early as 2015, the vast majority of Allstate's claims and damages against SE MI Hospital at issue in this case, each of which is identified at Exhibit 1 to the Complaint (*ECF No. 1-2*), still would not be time barred.[6] Under the "separate accrual rule,"[7] "each time plaintiff discovers or should have discovered

---

[6] SE MI Hospital appears to concede that the majority of Allstate's claims and damages are not time barred even if its statute of limitations arguments had merit. *See* ECF No. 41, PageID 618 (conceding that only the 39 payments identified in the Complaint as included in Allstate's damages that were made more than four (4) years before the Complaint was filed would be time barred based on SE MI Hospital's theory that the statute of limitations began to run in 2015).

[7] This rule is also known as the <u>Bankers Trust</u> accrual rule, as it originates with the decision of <u>Bankers Trust Co. v. Rhoades</u>, 859 F.2d 1096, 1102 (2d Cir. 1988). While it appears the Sixth Circuit has not directly addressed the separate accrual rule in the context of a RICO claim, district courts within this Circuit have concluded it likely would endorse its applicability. *See, e.g.,* <u>Trollinger v. Tyson Foods, Inc.</u>, 2006 U.S. Dist. LEXIS 17448, *17 (E.D. Tenn. Feb. 8, 2006) ("A majority of the Circuit Courts of Appeal have applied the separate accrual rule to civil RICO actions. Further, the Sixth Circuit has applied the separate accrual rule in the analogous antitrust context. At least one other district court in this Circuit

an injury caused by defendant's violation of § 1962, a new cause of action arises as to that injury." Lares Group, II v. Tobin, 47 F. Supp. 2d 223, 230 (D.R.I. 1999), quoting Bankers Trust Co. v. Rhoades, 859 F.2d 1096, 1105 (2d Cir. 1988).  The vast majority of Allstate's damages were suffered during the four (4) year period before its Complaint was filed.  *See* ECF No. 1-2 through 1-5, 1-7 through 1-10.  Thus, even if SE MI Hospital could somehow develop evidence to prove an inquiry notice date earlier than four (4) years prior to the date the Complaint was filed, it still would not be entitled to dismissal of all of Allstate's claims and damages against it.

### B.   ALLSTATE PROPERLY ALLEGES CONDUCT OF A RICO ENTERPRISE

### 1.   The Complaint Properly Alleges RICO Enterprises

A RICO enterprise is defined as "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity."  18 U.S.C. § 1961(4).  Allstate does not allege any association-in-fact enterprises, but rather four (4) distinct RICO enterprises comprised of each of the medical facility defendants, all of which are distinct legal entities organized under Michigan law.[8]   *See* ECF No. 1, PageID 89-104.

---

appears to have applied the separate accrual rule in the civil RICO context. For these reasons, this Court will apply the separate accrual rule in this action.").

[8] The RICO enterprises alleged in the Complaint are (1) the SE MI Hospital enterprise, for which Robertson P.C., Quiroga P.C., Comprehensive

Accordingly, SE MI Hospital's arguments and citations to caselaw regarding association-in-fact enterprises are inapposite to this case.  *See* ECF No. 41, PageID 619-620.

When, as in this case, the alleged enterprise is an "individual, partnership, corporation, association, or other legal entity (i.e., not an association-in-fact enterprise), the RICO enterprise requirement is easily satisfied."[9] First Capital Asset Mgmt. v. Satinwood, Inc., 385 F.3d 159, 173 (2d Cir. 2004).  The SE MI Hospital enterprise and each of the other RICO enterprises operated as corporate entities through which the defendants could bill Allstate and profit from unwarranted No-

---

Neuromonitoring, Robertson, Quiroga, and Broder are named as defendants (*ECF No. 1, Page ID 89-93, Counts I and II*); (2) the Robertson P.C. enterprise, for which SE MI Hospital, Comprehensive Neuromonitoring, Robertson, and Broder are named as defendants (*id. at Page ID 93-96, Counts III and IV*); (3) the Quiroga P.C. enterprise, for which SE MI Hospital and Quiroga are named as defendants (*id. at Page ID 97-100, Counts V and VI*); and (4) the Comprehensive Neuromonitoring enterprise, for which SE MI Hospital, Robertson P.C., Robertson, and Broder are named as defendants (*id. at Page ID 100-104, Counts VII and VIII*).  SE MI Hospital, Robertson P.C., Quiroga P.C., and Comprehensive Neuromonitoring are each distinct legal entities organized under Michigan law.

[9] The Supreme Court has noted that the historical understanding of a RICO enterprise is that of a business organization, which is exactly what Allstate has pleaded here. *See* Boyle v. United States, 556 U.S. 938, 952-953 (2009) ("It is clear from the statute and our earlier decisions construing the term that Congress used 'enterprise' in these provisions in the sense of 'a business organization,' . . . . the terms 'individual, partnership, corporation, association, or other legal entity' describe entities with formal legal structures most commonly established for business purposes").  Thus, the fact that the defendants utilized Michigan law to establish legal entities, which were thereafter used to commit fraud, does not protect them from the RICO Act's reach, but rather places them squarely in its historical purview.

Fault payments, but each was also an ongoing organization for carrying out business activities, fraudulent and otherwise, of its respective owners and managers.  Further, as legal entities organized under Michigan law, each enterprise clearly existed as a separate legal entity apart from the pattern of unlawful activity.  *See, e.g.*, <u>Parenteau v. Iberia Bank, N.A.</u>, 2013 U.S. Dist. LEXIS 15578, *21 (S.D. Ohio Feb. 5, 2013) ("as on Ohio limited liability company corporation, MKP existed as a separate legal entity apart from the pattern of unlawful activity").

### 2.     **The Complaint Properly Alleges That SE MI Hospital Conducted the RICO Enterprises for Which It Is a Defendant**

SE MI Hospital's complaints about the way Allstate alleges the operation of the RICO enterprises are equally unavailing.  It is not required that a complaint identify every employee, non-defendant entity, or individual that may have played some role in carrying out the activities of a RICO enterprise.  Allstate's Complaint properly identifies entities and persons that conducted each RICO enterprise, which is exactly what the statute requires.  *See* 18 U.S.C. § 1962(c) (applying RICO to persons "associated" with the enterprise that "conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity").[10]

---

[10] SE MI Hospital's motion to dismiss fails to distinguish between the counts for which SE MI Hospital is the RICO enterprise (*ECF No. 1, ¶¶ 445-463, Counts I and II*) and the counts for which SE MI Hospital is named as a defendant that conducted

SE MI Hospital also continues to ignore the actual factual allegations and numerous examples in the Complaint by asserting that it "only makes conclusory allegations" regarding the operation of an enterprise.  *See* ECF No. 41, PageID 621. Despite referencing paragraphs in the Complaint that explain that SE MI Hospital recruited and worked with medical providers with histories of similar fraud, SE MI Hospital incorrectly claims "[t]here are no facts alleged to show how the Hospital 'intentionally targeted' physicians to generate false bills."  Id. at PageID 622.  To the extent SE MI Hospital contends that the Complaint must allege specific evidence such as the precise content of its communications with physicians, such a claim is plainly incorrect.  The level of detail and specificity required to assert a valid RICO claim arising out of alleged fraud is defined by Fed. R. Civ. P. 9(b), which requires that a party "state with particularity the circumstances constituting fraud or mistake." To satisfy Rule 9(b), a plaintiff must allege "the time, place, and content of the alleged misrepresentation on which he or she relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud."  Bennett v. MIS Corp., 607 F.3d 1076, 1100 (6th Cir. 2010), quoting Yuhasz v. Brush Wellman, Inc., 341 F.3d 559, 563 (6th Cir. 2003).  "The rule . . . requires only that the 'circumstances' of the fraud be pled with particularity, not the evidence of the

---

other RICO enterprises (*id. at ¶¶ 464-519, Counts III through VIII*).  SE MI Hospital is not entitled to dismissal of any of the RICO counts for which it is the RICO enterprise since it is not a defendant as to those counts.

case." Michaels Bldg. Co. v. Ameritrust Company, N.A., 848 F.2d 674, 680 n.9 (6th Cir. 1988).

Allstate's Complaint describes the fraudulent scheme, describes SE MI Hospital's role and involvement in the scheme, and includes dozens of examples where the scheme was implemented by the defendants by submitting fraudulent bills to Allstate. Numerous decisions in both this District and other districts have found that the types of allegations made by Allstate easily suffice to assert a RICO cause of action. *See, e.g.,* Vital, 2018 U.S. Dist. LEXIS 80361 at *19; Elite Health Centers, 2017 U.S. Dist. LEXIS 30826 at *7; Radden, 2015 U.S. Dist. LEXIS 17788 at *4; Warren Chiropractic, 2015 U.S. Dist. LEXIS 104332 at *21; Allstate Ins. Co. v. Universal Health Group, Inc., 13-cv-15108-LVP-EAS, Docket No. 229, PageID 8176 (E.D. Mich. March 26, 2015) (denying the defendants' motion to dismiss and observing that "Allstate provide[d] specific examples of each Defendant's activities related to the fraud," and "explain[ed] in detail how the bills and medical documentation submitted to it by and/or with the knowledge and consent of Defendants contained false representations"); Pointe Physical Therapy, 107 F. Supp. 3d at 791 ("Where a plaintiff alleges a systematic practice of the submission of fraudulent claims over an extended period of time, the plaintiff need not allege the specific details of every fraudulent claim. Instead, the plaintiff must allege some representative examples of the fraudulent conduct with particularity"); Allstate Ins.

Co. v. Lyons, 843 F. Supp. 2d 358, 372-373 (E.D.N.Y. 2012) (a complaint that details the fraudulent scheme and provides representative examples satisfies Rule 9(b)).

SE MI Hospital also cannot obtain dismissal simply by contending that the extensive fraud identified by the Complaint, such as billing for services not rendered and for unnecessary services, do not involve "a treatment decision made by [SE MI Hospital]." *See* ECF No. 41, PageID 623.  First, this argument clearly presents a factual dispute that cannot be resolved on a motion to dismiss.  Second, it is well established that SE MI Hospital need not have controlled every decision or action of each RICO enterprise, but only must have had "some part" in directing the enterprise's conduct.  Reves v. Ernst & Young, 507 U.S. 170, 178-179 (1993).  In Reves, the U.S. Supreme Court explained that "[a]n enterprise is 'operated' or 'managed' by others 'associated with' the enterprise who exert control over it . . . ." Id. at 184.  "RICO liability is not limited to those with primary responsibility for the enterprise's affairs; only 'some part' in directing the enterprise's affairs is required." Ouwinga v. Benistar 419 Plan Services, Inc., 694 F.3d 783, 792 (6th Cir. 2012), quoting Reves, 507 U.S. at 179.  The Supreme Court in Reves held that § 1962(c) does not "requir[e] significant control over or within an enterprise." Reves, 507 U.S. at 179 n.4.  The Sixth Circuit has held that the "operation and management" required under § 1962(c) "can be accomplished either by making decisions on behalf of the

enterprise <u>or by knowingly carrying them out</u>."  <u>Ouwinga</u>, 694 F.3d at 792, quoting

<u>United States v. Fowler</u>, 535 F.3d 408, 418 (6th Cir. 2008) (emphasis original).  The

<u>Ouwinga</u> court reiterated that "knowingly carrying out the orders of the enterprise

satisfies the 'operation or management' test."  <u>Id</u>. at 793.

Allstate's Complaint easily satisfies the requirements to allege operation and

management by SE MI Hospital of the RICO enterprises for which it is named a

defendant, including by providing numerous examples in which SE MI Hospital

participated in and carried out the objectives of the RICO enterprises by, among

other things, granting privileges to physicians associated with the RICO enterprises,

using its facilities for unnecessary procedures ordered by the RICO enterprises, and

billing for the unnecessary procedures ordered by the RICO enterprises.  *See* ECF

No. 1, ¶¶ 93-105, 141, 143-164, 204-225, 238.  SE MI Hospital's role in carrying

out the RICO enterprises' activities and the orders of its co-defendants by utilizing

its facilities for the services and then billing for the services easily constitutes the

"operation and management" of each enterprise in which SE MI Hospital is named

a defendant.

SE MI Hospital's conduct also plainly was not ordinary commercial conduct.

Allstate's Complaint explains that SE MI Hospital targeted providers with a history

of similar fraudulent conduct[11] and coordinated with those providers to submit

fraudulent bills to Allstate, none of which can be characterized as "cooperation

inherent in normal commercial transactions."  *See* ECF No. 41, PageID 624, citing

United Food & Commercial Workers Unions v. Allgreen Co., 719 F.3d 84, 853-856

(7th Cir. 2013).  Similarly, the activities summarized above and alleged in detail in

the Complaint, such as coordinating with its co-defendants to bill for services not

rendered or making its facilities available to its co-defendants for procedures that

did not require the use of its facilities at all simply to generate additional,

unnecessary bills to Allstate cannot be characterized as the simple, ordinary conduct

of SE MI Hospital's own business.

## C.   THE COMPLAINT SATISFIES THE DISTINCTNESS REQUIREMENT NECESSARY TO ASSERT ITS 18 U.S.C. § 1962(C) RICO CLAIMS

Allstate's Complaint satisfies the "distinctness" requirement for an 18 U.S.C.

§ 1962(c) RICO claim.  To assert a RICO claim under 18 U.S.C. § 1962(c), a party

---

[11] SE MI Hospital's attempt to argue that its conspiracy with its co-defendants to submit fraudulent bills to Allstate was simply ordinary commercial conduct also highlights one of the reasons, which Allstate addresses further herein, that the Complaint's discussion of SE MI Hospital's relationship with numerous providers with a lengthy history of fraud and other dubious conduct is relevant and proper and should not be stricken.  Those allegations describe a pattern of conduct by which SE MI Hospital implemented the defendants' scheme to defraud Allstate by targeting and then working with questionable medical providers and explains why this was not just a "usual commercial relationship."  This argument also clearly presents a factual dispute about the nature of this conduct, which again cannot be resolved via a motion to dismiss.

must allege the existence of both person(s) who conduct a RICO enterprise as well as a separate (distinct) entity that is the enterprise.  *See* <u>Cedric Kushner Promotions, Ltd. v. King</u>, 533 U.S. 158, 161 (2001).  "Under RICO, a corporation cannot be both the 'enterprise' and the 'person' conducting or participating in the affairs of that enterprise."  <u>Begala v. PNC Bank, Ohio, N.A.</u>, 214 F.3d 776, 781 (6th Cir. 2000).

As discussed in Section III.B.1 above, Allstate's Complaint identifies four (4) different RICO enterprises that are each distinct legal entities: (1) the SE MI Hospital enterprise, (2) the Robertson P.C. enterprise, (3) the Quiroga enterprise, and (4) the Comprehensive Neuromonitoring enterprise.  *See* ECF No. 1, PageID 89-104 (counts I through VIII of the Complaint).  The Complaint also identifies the "persons" that conducted each enterprise (i.e., the defendants named on each count), none of which are the same entity that is the enterprise.[12]  <u>Id</u>.  These allegations are entirely consistent with the rules applicable to pleading a RICO enterprise.

It appears that SE MI Hospital's objection is that it is identified as a RICO enterprise in Counts I and II of the Complaint and also is named as a defendant that conducted and controlled the other RICO enterprises identified in Counts III through

---

[12] Despite the clear rule, the motion to dismiss objects that the Complaint does not satisfy "distinctness" because SE MI Hospital is not named as a defendant in Counts I and II of the Complaint, which are the counts related to the SE MI Hospital RICO enterprise, and objects that the same practice is followed with respect to each other RICO enterprise identified in the Complaint.  *See* ECF No. 41, PageID 626.  As noted, these pleadings are completely proper and indeed required to satisfy the distinctness requirement of a RICO claim.  There is no error in Allstate's Complaint.

VIII of the Complaint.  While SE MI Hospital appears to believe that for some reason it cannot be both a RICO enterprise conducted and controlled by others and in turn control other RICO enterprises, that is not the law and SE MI Hospital's motion does not cite any authority for such a proposition.  Instead, it simply concludes that "read as a whole" the Complaint impermissibly "intermingles" RICO "persons" and "enterprises."  *See* ECF No. 41, PageID 629.  This unsupported claim is belied by the numerous cases from this District cited above in which complaints similarly alleging multiple RICO enterprises have been upheld as stating valid claims for relief.

### D.   THE COMPLAINT PROPERLY ASSERTS CLAIMS OF RICO CONSPIRACY PURSUANT TO 18 U.S.C. § 1962(D)

SE MI Hospital's motion to dismiss offers two conclusory assertions for why Allstate's Complaint does not allege RICO conspiracy claims under 18 U.S.C. § 1962(d), neither of which it explains and neither of which has merit.  First, while acknowledging that § 1962(d) requires no overt act in furtherance of the conspiracy and that a defendant need only intend to further an endeavor which, if completed, would satisfy all of the elements of a substantive RICO offense, SE MI Hospital asserts that the Complaint makes "only conclusory allegations" that SE MI Hospital was party to a meeting of the minds to engage in the predicate acts.  *See* ECF No. 41, PageID 629-630.

This claim is plainly untrue, as Allstate's Complaint includes numerous specific allegations in support of each of its RICO conspiracy counts applicable to SE MI Hospital.  For example, with respect to the Robertson P.C. enterprise, the Complaint alleges that the defendants conducting the Robertson P.C. enterprise – SE MI Hospital, Comprehensive Neuromonitoring, Robertson, and Broder – "each agreed to further, facilitate, support, and operate the Robertson, P.C. enterprise," and that they "were aware of this purpose and agreed to take steps to meet the conspiracy's objectives, including the creation and submission to Allstate of insurance claim documents and medical record documents containing material misrepresentations."  *See* ECF No. 1, ¶¶ 477, 480.  The Complaint also alleges that SE MI Hospital and its co-defendants in the Robertson P.C. enterprise agreed to carry out the fraudulent scheme giving rise to Allstate's § 1962(c) claims, and that SE MI Hospital agreed, intended, and did carry out specific acts in furtherance of the conspiracy.  Id. at ¶¶ 466, 470, 476.  In addition, the Complaint provides numerous examples of practices that SE MI Hospital engaged in to carry out the agreed-upon scheme to defraud Allstate.  *See, e.g.,* id. at ¶¶ 2, 3, 41, 43-45, 84, 88, 106-116, 141, 204-207, 215, 239, 289-292, 305, 410.  The Complaint makes similar specific allegations with respect to each other RICO conspiracy count asserted against SE MI Hospital and includes similar specific examples of SE MI Hospital's

practices.  The motion to dismiss never addresses these allegations and does not explain how they fail to allege a RICO conspiracy claim.

SE MI Hospital also argues that Allstate has not stated a RICO conspiracy claim against SE MI Hospital because it needs to identify actions taken by a "recognized officer."  *See* ECF No. 41, PageID 630-631.  This claim is not a valid ground for dismissal of the Complaint's RICO conspiracy counts.  As an initial matter, SE MI Hospital identifies no authority at all for the proposition that a Complaint must identify the precise officer, employee, or other agent of a corporation or other business entity that agreed to pursue the activities resulting in a violation of the RICO statute in order to also assert a conspiracy count.  Moreover, even if such allegations were required, Allstate's Complaint specifically asserts that SE MI Hospital was operated and controlled by Robertson, P.C., Quiroga, P.C., Comprehensive Neuromonitoring, Robertson, Quiroga, and Broder, and that those entities and individuals agreed to and did pursue the scheme to defraud Allstate.  *See* ECF No. 1, ¶¶ 2, 3, 41, 43-45, 84, 88, 215, 239, 289, 456-463.  The exhibits to the Complaint also identify numerous fraudulent bills submitted to Allstate by SE MI Hospital as part of the conspiracy and specifically identify the individual doctor that allegedly provided the service that was billed.  *See* ECF No. 1-6.

To the extent that SE MI Hospital attempts to suggest at trial that the entities or individuals that engaged in the fraud described by Allstate's Complaint were not

authorized to so act on its behalf (and that it did not ratify those acts by accepting the benefit of their actions by accepting payments from Allstate to which it was not entitled), such a claim would not entitle it to dismissal at this stage of the litigation. At best, such an argument would create a question of fact not appropriate for disposition via a motion to dismiss.

### E.  ALLSTATE'S COMPLAINT PROPERLY ALLEGES A CLAIM FOR COMMON LAW FRAUD

Michigan law provides that to state a claim for fraud a plaintiff must establish the following elements:

> (1) the defendant made a material representation; (2) the representation was false; (3) when the defendant made the representation, the defendant knew that it was false, or made it recklessly, without knowledge of its truth as a positive assertion; (4) the defendant made the representation with the intention that the plaintiff would act upon it; (5) the plaintiff acted in reliance upon it; and (6) the plaintiff suffered damage.

M&D, Inc. v. McConkey, 585 N.W.2d 33, 36 (Mich. 1998).  A claim for common law fraud also must satisfy the particularity requirement of Fed. R. Civ. P. 9(b). Bennett, 607 F.3d at 1100.

Allstate's Complaint satisfies each element required to assert a fraud claim and satisfies Rule 9(b).  As discussed above with respect to its RICO counts, the Complaint describes in detail the scheme implemented by the defendants to knowingly submit bills to Allstate for payment that contained misrepresentations, including by representing that those bills were properly payable under the No-Fault

26

Act when they knew they were not.  *See* ECF No. 1, ¶¶ 41-45, 83-88, 203, 409-410.

It also provides numerous specific examples where SE MI Hospital and its co-defendants employed this scheme, such as by billing for services that were not rendered, by multiple billing for the same services, and by billing for services they knew were not medically necessary.  Id. at ¶¶ 89-104, 141, 144-164, 195, 204-238, 286, 289-305.  These many examples each identify the date of the fraudulent services billed, the defendants involved, and an explanation of why the bills were fraudulent. Id.  The Complaint also appends an exhibit that identifies dozens of specific instances where the defendants mailed or faxed fraudulent bills to Allstate, identifies the individual responsible for the services billed, and provides the date the bills were submitted to Allstate.  *See* ECF No. 1-6.  Finally, the Complaint properly alleges that the fraudulent bills were submitted to Allstate with the intention that Allstate rely on them, and that Allstate did so rely on them by making payments to the defendants and as a result suffered damages caused by the defendants' fraud.  *See* ECF No. 1, ¶¶ 406-413.

SE MI Hospital cannot, and does not, reasonably dispute that these allegations satisfy the elements to assert a claim of fraud, nor can they dispute that the requirements of Rule 9(b) are satisfied for the reasons previously discussed with respect to Allstate's RICO claims.  *See, e.g.,* Pointe Physical Therapy, 107 F. Supp. 3d at 791 ("Where a plaintiff alleges a systematic practice of the submission of

27

fraudulent claims over an extended period of time, the plaintiff need not allege the specific details of every fraudulent claim. Instead, the plaintiff must allege some representative examples of the fraudulent conduct with particularity"), quoting Allstate Ins. Co. v. Linea Latina De Accidentes, Inc., 781 F. Supp. 2d 837, 847 (D. Minn. 2011). *See also* Lyons, 843 F. Supp. 2d at 372-373 (a complaint that details the fraudulent scheme and provides representative examples satisfies Rule 9(b)). Instead of addressing the actual allegations in the Complaint summarized above, the motion to dismiss makes the demonstrably false assertion that "Allstate does not make a single, specific factual allegation supporting a fraud claim against the Hospital." *See* ECF No. 41, PageID 632 (emphasis added). This is clearly false as demonstrated by the actual allegations of the Complaint and as summarized above, and SE MI Hospital's practice of simply ignoring allegations that disprove its arguments is improper. *See* McClain, 272 F. Supp. 2d at 638 ("[t]he Defendants are characterizing Plaintiff's claim too narrowly by quoting one or two phrases from the Complaint and then concluding that those small portions are Plaintiff's entire case"); Allstate Ins. Co. v. Executive Ambulatory Surgical Center, LLC, 22-cv-11263-GCS-CI, Docket No. 43 (E.D. Mich. Nov. 2, 2022) ("Executive") ("[d]efendants' various arguments regarding the insufficiency of Plaintiffs' pleading, which wholly ignore the specific allegations against the Ramakrishnan Defendants, are meritless. Allstate

has provided sufficient detail to give the Ramakrishnan Defendants notice of the fraud claims against them . . . ").

To the extent SE MI Hospital's argument can be understood to be that the Complaint does not allege sufficient <u>evidence</u> proving Allstate's fraud claim, this argument is equally baseless both as a matter of law and fact.  As explained in <u>Allen v. Andersen Windows, Inc.</u>, 913 F. Supp. 2d 490, 498 (S.D. Ohio 2012), federal pleading rules require only that "the circumstances of the fraud, and not the evidence of the case, be pleaded with particularity."  Even if specific allegations describing evidence proving the defendants' intent to deceive Allstate was required, the Complaint's extensive allegations of the defendants' lengthy, ongoing, and repeated activities through numerous specific examples would satisfy this (non-existent) standard, since such intent may be inferred from a pattern of conduct.  *See, e.g.,* <u>Eifler v. Wilson & Muir Bank & Tr. Co.</u>, 588 F. App'x 473, 478 (6th Cir. 2014) (affirming that fraudulent intent may be inferred through a pattern of conduct); <u>Executive</u>, 22-cv-11263-GCS-CI, Docket No. 43 (holding that "the number and pattern of allegedly fraudulent claims supports a reasonable inference that their submission was intentional or reckless").

Throughout its motion, SE MI Hospital acknowledges Allstate's allegations of improperly billed services, but rather than explain why the allegations do not state a claim for relief sufficient to overcome a Fed. R. Civ. P. 12(b)(6) motion, it instead

speculates that those improper bills "could easily" be the result of "neglect or a mistake." *See* ECF No. 41, PageID 633.  Obviously, SE MI Hospital will be free to attempt to prove at trial that when it repeatedly submitted bills for services it never provided that it simply made a "mistake."  However, such a claim has no relevance in the context of a motion to dismiss where the factual allegations of the complaint must be accepted as true.  *See* Bridge v. Ocwen Fed. Bank, FSB, 681 F.3d 355, 358 (6th Cir. 2012) ("[i]n determining whether a complaint states a claim, a court must accept as true all the factual allegations in the complaint").

## F.   THE COMPLAINT PROPERLY ALLEGES A CIVIL CONSPIRACY CLAIM AGAINST SE MI HOSPITAL

"A civil conspiracy is a combination of two or more persons, by some concerted action, to accomplish a criminal or unlawful purpose, or to accomplish a lawful purpose by criminal or unlawful means."  Whitlow v. Lewis, 2022 Mich. App. LEXIS 3692, *5 (Mich. Ct. App. June 23, 2022), quoting Admiral Ins. Co. v Columbia Cas. Ins. Co., 486 N.W.2d 351 (1992).  "Liability does not arise from a civil conspiracy alone; rather, it is necessary to prove a separate, actionable tort," such as, in this case, fraud.  Id.  As with its "arguments" for dismissal of Allstate's fraud claim, SE MI Hospital's motion does not actually provide any explanation or analysis for its contention that the Complaint does not state a viable civil conspiracy claim under these legal standards, and it again ignores the Complaint's actual allegations.

30

Rather than discuss what the Complaint alleges, SE MI Hospital's entire "argument" consists of two sentences, the first of which is the absurd claim that "Allstate has not stated any facts showing that the Hospital made a concerted effort with other parties to accomplish an unlawful purpose." *See* ECF No. 41, PageID 634. As already discussed at length above with respect to Allstate's RICO conspiracy counts, Allstate's Complaint includes numerous specific allegations that describe the agreement between the defendants to pursue a scheme to defraud Allstate and the implementation of that scheme. Second, SE MI Hospital simply asserts that the conspiracy claim must be dismissed if Allstate's fraud claim is dismissed. *See* ECF No. 41, PageID 634. Since it is clear that the Complaint alleges all necessary elements of common law fraud, as well as asserting multiple RICO claims and additional causes of action, for the reasons addressed previously, the motion identifies no basis for dismissing Allstate's civil conspiracy claim.

### G. THE COMPLAINT STATES A CLAIM FOR PAYMENT UNDER MISTAKE OF FACT

Michigan law provides that "[a]s a general rule, a payment made under a mistake of fact which induces the belief that the other party is entitled to receive the payment when, in fact, the sum is neither legally nor morally due to him, may be recovered, provided the payment has not caused such a change in the position of the payee that it would be unjust to require the refund. . . ." Wilson v. Newman, 617 N.W.2d 318, 321 (Mich. 2000), quoting Smith v Rubel, 13 P.2d 1078 (Ore. 1932).

31

Allstate's Complaint alleges that its payments to SE MI Hospital were made with the mistaken belief that those amounts were owed to SE MI Hospital as a result of its fraudulent misrepresentations, would result in SE MI Hospital's unjust enrichment if it was allowed to retain those payments, and seeks the return of the monies Allstate paid to it. *See* ECF No. 1, ¶¶ 537-542. There is no basis to dispute that these allegations state a claim for payment under mistake of fact under Michigan law, and the motion to dismiss identifies no valid reason to conclude otherwise.

Indeed, SE MI Hospital's sole argument that this count of the Complaint fails to state a claim for relief relies on inapplicable caselaw related to the reformation of a contract due to unilateral mistake. The motion to dismiss posits that since there is no contract to be reformed in this case, no claim is stated. *See* ECF No. 41, PageID 634, citing <u>Johnson Family L.P. v. White Pine Wireless, LLC</u>, 761 N.W.2d 353 (Mich. Ct. App. 2008). However, the law concerning unilateral mistake in the formation of a contract has no relevance to Allstate's claim for payment under mistake of fact in this case, and is an entirely different legal principle. Simply put, Michigan does not require the existence of a contract to be reformed for a party to assert a claim for the equitable return of payments made under a mistake of fact. *See, e.g.,* <u>Wilson</u> 617 N.W.2d at 318 (permitting a claim under mistake of fact seeking the return of a payment made to judgment creditor by a garnishee where the

32

garnishee mistakenly believed a debt was owed to the judgment debtor, not based on reformation of a contract between the parties).

### H. ALLSTATE'S COMPLAINT ASSERTS A VALID CLAIM FOR UNJUST ENRICHMENT

In arguing for dismissal of Allstate's unjust enrichment count, SE MI Hospital does not dispute that Allstate's Complaint properly alleges all necessary elements of that cause of action. *See* ECF No. 41, PageID 635. Instead, after first admitting that the Complaint does <u>not</u> allege that a contract exists between Allstate and SE MI Hospital, the motion to dismiss speculates that any payments SE MI Hospital received from Allstate were made pursuant to "an express contract covering the subject matter," consisting of either a settlement agreement or an Allstate insurance policy with its insureds. <u>Id.</u> at PageID 635.

There is no contract, express or otherwise, between Allstate and SE MI Hospital. As with SE MI Hospital's other arguments, this same argument has been made by providers in similar insurer fraud actions and rejected by courts in this District. *See, e.g.,* <u>State Farm Mut. Auto. Ins. Co. v. Universal Health Group, Inc.,</u> 2014 U.S. Dist. LEXIS 151213, *27 (E.D. Mich. Oct. 24, 2014) ("As plaintiff disputes the existence of an express contract between it and defendants, the claim will be permitted to go forward"). Moreover, this District has rejected the contention that the existence of insurance policies with patients somehow creates an express contract between Allstate and medical providers. *See, e.g.,* <u>Nurse Notes, Inc. v.</u>

Allstate Ins. Co., 2012 U.S. Dist. LEXIS 38059, *6-*8 (E.D. Mich. Mar. 21, 2012) (No-Fault provider "has not shown it has a contract with Allstate to provide services. The agreement is between [the insured] and Allstate. [The provider] cannot establish a breach of contract claim between it and Allstate."); Universal Health Group, Inc., 13-cv-15108, Docket No. 229 at PageID 8200 (denying motion to dismiss Allstate's unjust enrichment claim "because there is no express contract between the parties" [emphasis original]). As there is no contract between Allstate and SE MI Hospital, Allstate's unjust enrichment count must stand.

## I. ALLSTATE'S CLAIM FOR DECLARATORY RELIEF PURSUANT TO 28 U.S.C. § 2201 IS PROPER

SE MI Hospital's argument for dismissal of Allstate's claim for declaratory relief pursuant to 28 U.S.C. § 2201 is not clear. While it initially states that "[t]he Declaratory Judgment Act authorizes courts to declare the rights and other legal relations of a party seeking such a declaration, whether or not further relief is or could be sought," it then makes the opposite claim that the Act does not create an independent cause of action. *See* ECF No. 41, PageID 636 (emphasis added).

To the extent the motion argues that the Complaint cannot state a claim for declaratory relief *regardless* of whether the substantive claims for damages are permitted to proceed, this assertion is incorrect as a matter of law. While the statute did not create an independent basis for federal jurisdiction where it would not otherwise exist, the purpose of the statute was to create a new claim and basis for

relief.  *See* Travelers Ins. Co. v. Davis, 490 F.2d 536 (3d Cir. 1974).  The caselaw cited by SE MI Hospital's motion does not support a different result.  In Davis v. United States, 499 F.3d 590, 594 (6th Cir. 2007), for example, the Sixth Circuit confirmed that a claim for declaratory relief pursuant to 28 U.S.C. § 2201 could not be the basis for exercising subject matter jurisdiction if there were no other substantive claims for damages that would convey jurisdiction.  That case did not hold that a claim for declaratory relief could not be asserted if there were other claims that provided a basis for jurisdiction.  Similarly, the court in Int'l Ass'n of Machinists & Aerospace Workers v. TVA, 108 F.3d 658, 667-668 (6th Cir. 1997), held that the plaintiff could not assert a claim for declaratory relief if all of its claims for substantive relief were time-barred, not that a separate cause of action seeking a declaratory judgment could never be asserted.

On the other hand, to the extent SE MI Hospital simply argues that the declaratory judgment count should be dismissed for the same unsupported reasons it argues that Allstate's other counts should be dismissed, then its argument fails for the reasons addressed above with respect to each of Allstate's other claims for relief.  Because Allstate's Complaint does state, for example, multiple valid RICO counts that confer subject matter jurisdiction upon this Court, the Court also may consider Allstate's claim for declaratory relief.  *See, e.g.,* Davis v. Romney, 490 F.2d 1360

(3d Cir. 1974) (finding that declaratory judgments are available where appropriate even though other remedies are also available).

### J.  SE MI HOSPITAL'S MOTION TO STRIKE MUST BE DENIED

SE MI Hospital asks the Court to strike a series of allegations in the Complaint that identify some of the many different doctors and medical clinics with a history of fraudulent and criminal history that SE MI Hospital nonetheless permitted to use its facilities, and that did use those facilities to continue to engage in similar fraudulent behavior.  *See* ECF No. 41, PageID 637-640.  The motion to strike encompasses allegations in the Complaint related to (1) doctors that also are named as defendants in this case (*ECF No. 1, ¶¶ 45-48*), (2) doctors who were listed on SE MI Hospital's own website as being affiliated with it (*id. at ¶¶ 51-61*), and (3) doctors and their associated medical clinics that utilized SE MI Hospital's facilities to bill for fraudulent and unnecessary medical procedures (*id. at ¶¶ 141, 218-224, 226-238)*, and with respect to whose services SE MI Hospital also submitted bills to Allstate that are at issue in this Complaint (*id. at ¶¶ 62-78*).

SE MI Hospital argues that these allegations are "impertinent," "immaterial" and are included only to "taint" SE MI Hospital's reputation and to unfairly prejudice it.  *See* ECF No. 41, PageID 640-641.  This is demonstrably not true.  "An allegation is 'impertinent' or 'immaterial' when it is not relevant to the issues involved in the action."  <u>Pointe Physical Therapy</u>, 107 F. Supp. 3d at 801, quoting <u>L and L Gold</u>

Assocs., Inc. v. American Cash for Gold, LLC, 2009 U.S. Dist. LEXIS 48767, *2 (E.D. Mich. June 10, 2009).  Allstate's Complaint alleges an elaborate and extensive scheme to defraud by SE MI Hospital and its co-defendants to generate as many bills as possible for payment under the Michigan No-Fault Act, including bills for services allegedly performed at SE MI Hospital's facilities that the defendants knew were medically unnecessary and bills for services they did not actually provide.  *See, e.g.,* ECF No. 1 at ¶¶ 1-3, 41-45, 106-116, 204-238, 258-278, 286, 289-305.  The Complaint specifically alleges that part of that scheme involved SE MI Hospital intentionally pursuing relationships with medical providers that have a history of similar fraudulent conduct because those providers would facilitate the defendants' fraudulent scheme by ordering unnecessary procedures and making unnecessary use of SE MI Hospital's facilities for those procedures, which allowed SE MI Hospital to bill Allstate.  Id. at ¶ 45.  The Complaint substantiates these allegations by detailing numerous examples of this practice, identifying several of the providers targeted by SE MI Hospital that it authorized to perform procedures at its facilities and their histories of fraudulent and/or criminal conduct, and with respect to which SE MI Hospital then submitted bills to Allstate.  Id. at ¶¶ 46-79.

Each of the allegations is directly relevant to and provides evidence of the defendants' implementation of their fraudulent scheme.  Thus, any suggestion that the allegations are subject to a motion to strike pursuant to Fed. R. Civ. P. 12(f)

37

because they are "impertinent" and "immaterial" as a result of being irrelevant must be rejected.  Similarly, the argument that the allegations are "unfairly prejudicial," "scandalous," or that "they improperly attempt[] to taint the reputation of Defendant SE MI Hospital by connecting it to the alleged bad acts of others" are equally unfounded.  *See* ECF No. 41, PageID 637-641.  Notably, the motion never identifies any actual unfair prejudice or harm that SE MI Hospital will suffer, because it cannot.  SE MI Hospital's motion should be rejected for that reason alone.  *See* Coulthard v. Trott & Trott, P.C., 2013 U.S. Dist. LEXIS 193971, *3 (E.D. Mich. Nov. 25, 2013) (explaining that the court must be able to find that an allegation is both irrelevant and unfairly prejudicial in order to grant a motion to strike). Moreover, as Allstate's Complaint explains, SE MI Hospital is unquestionably connected to each of the identified medical providers by the fact that it authorized and permitted those providers to use its facilities to bill for alleged procedures that were allegedly performed there, and by the fact that SE MI Hospital also billed Allstate for the fraudulent services allegedly provided at its facility by the identified doctors.[13]

---

[13] The motion to strike also objects because the Complaint does not detail each of the procedures performed at SE MI Hospital by each of the different providers identified or the exact claims at issue in this case that are associated with each provider.  *See* ECF No. 41, PageID 638-640.  SE MI Hospital does not argue that these additional details are required to be alleged by Fed. R. Civ. P. 8(a), 9(b), or any other Rule, and indeed no such requirement exists.  Further, SE MI Hospital does not explain how additional allegations that further detail the fraudulent conduct of each of the medical

The allegations about the providers who were used to generate the bills at issue is directly relevant to SE MI Hospital's practice and pattern of seeking out such providers, who then engaged in the same improper conduct with respect to services allegedly provided at SE MI Hospital.  Mail and wire fraud, the RICO predicate acts alleged by the Complaint, require a showing of a scheme to defraud.  *See* Heinrich v. Waiting Angels Adoption Services, 668 F.3d 393, 404 (6th Cir. 2012).  Common law fraud also requires a showing of intent to defraud.  Id.; Yadlosky v. Grant Thornton, L.L.P., 120 F. Supp. 2d 622, 635 (E.D. Mich. 2000).  Fraudulent intent "may be established by actions and inferences arising from them."  Foreman v. Foreman, 701 N.W.2d 167, 176 (Mich. App. 2005).  *See also* United States v. Rayborn, 495 F.3d 328, 338 (6th Cir. 2007) (intent can "be established by circumstantial evidence and by inferences drawn from examining the scheme itself which demonstrate that the scheme was reasonably calculated to deceive . . ."), quoting United States v. Winkle, 477 F.3d 407, 413 (6th Cir. 2007).  Evidence that SE MI Hospital sought out numerous medical providers with a history of fraudulent conduct to provide services at its facilities, and who then did so using the same

---

providers at issue and SE MI Hospital's close relationship with each would somehow make the allegations more relevant or less prejudicial to SE MI Hospital.  The fact that Allstate may have alleged even more evidence detailing the defendants' intentional association with medical providers with a history of fraudulent conduct as a way of carrying out their own fraudulent plan is not a valid basis to strike plainly relevant allegations in the Complaint.

fraudulent practices, is plainly relevant to proving SE MI Hospital's intent to defraud Allstate, and therefore cannot be deemed "unfairly" prejudicial at all.

## IV.   <u>CONCLUSION</u>

Allstate's Complaint properly alleges facts supporting each element of each of its counts against SE MI Hospital and all of the allegations in the Complaint are relevant to those claims.  As there is no basis for any of SE MI Hospital's arguments for dismissal of the claims against it and no basis to strike any allegations of the Complaint, its motion must be denied.

Respectfully submitted,

KTM

*/s/ Andrew H. DeNinno*

_____
Nathan A. Tilden (P76969)
ntilden@ktmpc.com
Andrew H. DeNinno
adeninno@ktmpc.com
William G. Potter
wpotter@ktmpc.com
38777 Six Mile Road, Suite 314
Livonia, MI 48152
(734) 521-9000

350 Granite Street, Suite 2204
Braintree, MA 02184
(617) 770-2214

Dated:  November 3, 2022                    *Attorneys for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I, Andrew H. DeNinno, counsel for Plaintiffs, hereby certify that on November 3, 2022, I electronically filed the foregoing papers with the Clerk of the Court using the ECF system, which will send notification of such filing to all counsel of record.

KTM

*/s/ Andrew H. DeNinno*
_____

Andrew H. DeNinno
adeninno@ktmpc.com
350 Granite Street, Suite 2204
Braintree, MA 02184
(617) 770-2214

38777 Six Mile Road, Suite 314
Livonia, MI 48152
(734) 521-9000