UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ALLSTATE INSURANCE COMPANY,
et al.,
                                                    Case No. 2:22-cv-11684

                            Plaintiffs,             HONORABLE STEPHEN J. MURPHY, III

v.

SOUTHEAST MICHIGAN SURGICAL
HOSPITAL, et al.,

                            Defendants.
_____/

**<u>ORDER DENYING MOTION TO DISMISS AND TO STRIKE [41]</u>**

Plaintiffs Allstate Insurance Company, Allstate Fire and Casualty Insurance

Company, and Allstate Property and Casualty Insurance Company sued Defendants

Southeast Michigan Surgical Hospital, J. Alan Robertson, M.D., P.C., Martin

Quiroga, P.C., Comprehensive Neuromonitoring, J. Alan Robertson, Martin Quiroga,

and Sidney Broder. ECF 1.[1] Plaintiffs alleged that Defendants violated the Racketeer

Influenced and Corrupt Organizations (RICO) Act, 18 U.S.C. § 1962(c) and (d), by

"submitting and causing to be submitted false and fraudulent records, bills, and

invoices . . . for treatment and services that were not actually performed, were

medically unnecessary, were fraudulently billed, and were not lawfully rendered." *Id.*

at 2. Defendant Southeast Michigan Surgical Hospital moved to dismiss the

complaint under Federal Rule of Civil Procedure 12(b)(6). ECF 41. The parties briefed

_____

[1] The parties have since stipulated to dismissal of Defendants J. Alan Robertson and
J. Alan Robertson, M.D., P.C. ECF 45.

1

the motion. ECF 43; 44. For the following reasons, the Court will deny the motion to dismiss.[2]

## BACKGROUND[3]

Plaintiffs alleged that Defendants "submit[ted] exorbitant charges to [Plaintiffs] for purported medical services, procedures, and equipment that were not actually provided, were unlawful, were not medically necessary, and were fraudulently billed." ECF 1, PgID 7. According to Plaintiffs, the scheme was "primarily driven by [Defendant Southeast Michigan Surgical Hospital], a facility that recruited physicians to bill for medically unnecessary and excessive procedures so that it could submit exorbitant facility fees to [Plaintiffs]." *Id.* at 8. Plaintiffs also alleged that Defendant Southeast Michigan Surgical Hospital provided the other Defendants with "facilities at which to bill for medically unnecessary procedures." *Id.* at 94; 98; 101. Plaintiffs claimed that Defendant Southeast Michigan Surgical Hospital intentionally "associated with . . . physicians with extensive disciplinary and criminal histories[,] . . . compromised practices[,] and limited opportunities to practice in traditional and legitimate hospital settings" to carry out their scheme. *Id.* at 16. Plaintiffs also claimed common law fraud, civil conspiracy, and unjust enrichment against all Defendants and payment under mistake of fact against

---

[2] Based on the briefing of the parties, the Court will resolve the motion without a hearing because the issues are clear and no clarity or efficiency would be by oral argument. *See* Fed. R. Civ. P. 78(b); E.D. Mich. L.R. 7.1(f)(2).

[3] Because the Court must view all facts in the light most favorable to the nonmoving party, *see Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008), the Court's recitation does not constitute a finding of fact.

Defendants Southeast Michigan Surgical Hospital, Robertson, Quiroga, and Comprehensive Neuromonitoring. *Id.* at 104–09. Beyond that, Plaintiffs also requested declaratory relief "that no previously-denied and pending claims submitted to [them] by [] [D]efendants are compensable." *Id.* at 2.

After Defendants Broder, Comprehensive Neuromonitoring, Quiroga PC, and Quiroga answered the complaint, ECF 30; 31; 35, Defendant Southeast Michigan Surgical Hospital moved to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6), ECF 41.[4] Defendants argued that the claims in the complaint were barred by the relevant limitations period. *Id.* at 611. Defendants also argued that Plaintiffs failed to state a claim for a RICO violation because they failed to show that Defendant Southeast Michigan Surgical Hospital participated in or conducted a RICO enterprise, failed to satisfy the RICO distinctness requirement, and failed to show that Defendant Southeast Michigan Surgical Hospital was part of a RICO conspiracy. *Id.* at 619, 625, 629. Further, Defendants maintained that all of Plaintiffs' State-law claims should be dismissed for failure to state a claim. *Id.* at 630–35. Last, Defendant claimed that the complaint was "rife with redundant, immaterial, impertinent, and scandalous allegations that should be stricken" by the Court under Federal Rule of Civil Procedure 12(f). *Id.* at 636.

## LEGAL STANDARD

The Court may grant a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) if the complaint fails to allege facts "sufficient 'to raise a right to relief above

---

[4] Defendants Quiroga, P.C. and Quiroga concurred in the motion to dismiss. ECF 47.

the speculative level,' and to 'state a claim to relief that is plausible on its face.'" *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007)). In a Rule 12(b)(6) motion, courts can only "consider the [c]omplaint and any exhibits attached thereto . . . [and] items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the [c]omplaint and are central to the claims contained therein." *Bassett*, 528 F.3d at 430 (citation omitted); *see also Decoration Design Sols., Inc. v. Amcor Rigid Plastics USA, Inc.*, 553 F. Supp. 3d 424, 427 (E.D. Mich. 2021) (Murphy, J.).

The Court views the complaint in the light most favorable to the plaintiff, presumes the truth of all well-pleaded factual assertions, and draws every reasonable inference in the nonmoving party's favor. *Bassett*, 528 F.3d at 430. But the Court will not presume the truth of legal conclusions in the complaint. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). If "a cause of action fails as a matter of law, regardless of whether the plaintiff's factual allegations are true or not," then the Court must dismiss the complaint. *Winnett v. Caterpillar, Inc.*, 553 F.3d 1000, 1005 (6th Cir. 2009).

## DISCUSSION

Defendants lodged eight arguments in their motion to dismiss: (1) the limitations period bars the claims; (2) Plaintiffs failed to state a claim for a RICO violation against Defendant Southeast Michigan Surgical Hospital; (3) Plaintiffs failed to plead common law fraud with particularity; (4) Plaintiffs failed to state a

claim for civil conspiracy; (5) Plaintiffs failed to allege a contract to reform; (6) Plaintiffs failed to plead a valid unjust enrichment claim; (7) Plaintiffs' claim for declaratory relief fails; and (8) certain complaint allegations should be stricken as improper. *See* ECF 41, PgID 603–04. The Court will address each argument in turn.

I.    Limitations Period

RICO claims are subject to a four-year limitations period. *Rotella v. Wood*, 528 U.S. 549, 553 (2000). "The four-year period begins to run when a party knew, or through exercise of reasonable diligence should have discovered, that the party was injured by a RICO violation." *Sims v. Ohio Cas. Ins. Co.*, 151 F. App'x 433, at *1 (6th Cir. 2005) (citing *Rotella*, 528 U.S. at 553–55). Put another way, "the running of the statute of limitations begins when a plaintiff is put on inquiry notice—that is, when the plaintiff has been presented with evidence suggesting the possibility of fraud." *Isaak v. Trumbull Sav. & Loan Co.*, 169 F.3d 390, 399 (6th Cir. 1999) (citation omitted). "Inquiry notice is triggered by evidence of the possibility of fraud, not full exposition of the scam itself." *Id.* (citation omitted).

Defendants argued that Plaintiffs' claims accrued, and "should be limited to[,] damages allegedly occurring after [July 22, 2018]." ECF 41, PgID 611. They maintained that the complaint used the inapplicable "injury and pattern discovery" rule the Supreme Court rejected in *Rotella. Id.* at 613–14. To be sure, Plaintiffs alleged that "[e]vidence of the fraudulent scheme . . . was not discovered until after *patterns* had emerged" because of "[D]efendants' material misrepresentations and other affirmative acts designed to conceal their fraudulent scheme." ECF 1, PgID 83

(emphasis added). Thus, Plaintiffs' allegations could seem, at first glance, to be based on the discredited "injury and pattern discovery" rule.

But the Court will deny the motion to dismiss because "courts should not dismiss complaints on statute-of-limitations grounds when there are disputed factual questions relating to the accrual date." *Am. Premier Underwriters, Inc. v. Nat'l R.R. Passenger Corp.*, 839 F.3d 458, 464 (6th Cir. 2016) (citation omitted). "Examples of such disputed factual questions include claims that the defendant fraudulently concealed facts, thereby preventing the plaintiff from learning of its injury[,] . . . and complex issues about whether information in the plaintiff's possession sufficed to alert it of the claim." *Id.* (citations omitted). Plaintiffs alleged that Defendants prevented them from discovering the injury by fraudulently concealing facts. ECF 1, PgID 83. The parties also disagreed about whether the information in Plaintiffs' possession was enough to alert them of the alleged injury. *See* ECF 41, PgID 617 (Defendants arguing that "there can be no doubt that Plaintiffs were presented with evidence suggesting the possibility of fraud" based on the medical bills submitted to Plaintiffs before July 22, 2018); ECF 43, PgID 717 (Plaintiffs arguing that "the fact that [Defendant Southeast Michigan Surgical] Hospital's bills were fraudulent was not evident upon receipt and therefore receipt alone could not have put [Plaintiffs] on inquiry notice as to [Defendant Southeast Michigan Surgical Hospital]'s fraudulent activities sufficient to trigger the running of the statute of limitations period").

In short, both of the Sixth Circuit's "disputed factual questions" examples are present here: (1) a claim that Plaintiffs were prevented from learning of their injury

because Defendants fraudulently concealed facts and (2) "complex issues about whether information in [Plaintiffs'] possession sufficed to alert [them] of the claim." *Am. Premier Underwriters*, 839 F.3d at 464 (citations omitted). Thus, the Court will not dismiss the case based on the limitations period because "there are disputed factual questions relating to the accrual date." *Id.* (citation omitted).

II.  RICO Claim Against Defendant Southeast Michigan Surgical Hospital

Defendants argued that the RICO claim brought by Plaintiffs against Defendant Southeast Michigan Surgical Hospital should be dismissed because the complaint failed to state a claim under Rule 12(b)(6). ECF 41, PgID 619. Specifically, Defendants argued that the complaint failed to plead facts that showed Defendant Southeast Michigan Surgical Hospital conducted or participated in a RICO enterprise, failed to satisfy the distinctness requirement for RICO claims, and failed to plausibly allege a RICO conspiracy. *Id.* at 619, 625, 629. The Court will address the arguments in order.

A.  *Conduct of an Enterprise*

18 U.S.C. § 1962(c) makes it "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." "To state a RICO claim, a plaintiff must plead the following elements: (1) conduct; (2) of an enterprise; (3) through a pattern; (4) of racketeering activity." *Ouwinga v. Benistar 419 Plan Servs., Inc.*, 694 F.3d 783, 791 (6th Cir. 2012) (cleaned up).

"RICO liability is not limited to those with primary responsibility for the enterprise's affairs . . . [or] to those with a formal position in the enterprise." *Reves v. Ernst & Young*, 507 U.S. 170, 179 (1993) (footnote omitted). But liability does attach if the defendant played "*some* part in directing the enterprise's affairs." *Id*. Directing an enterprise's affairs "can be accomplished either by making decisions on behalf of the enterprise or by knowingly carrying them out." *United States v. Fowler*, 535 F.3d 408, 418 (6th Cir. 2008) (collecting cases). One cannot be liable under § 1962(c) "unless one has participated in the operation or management of the enterprise itself." *Reves*, 507 U.S. at 183.

Defendants focused on the first element of a RICO claim and argued that the complaint failed to plead facts that showed "conduct of an enterprise." ECF 41, PgID 619. Specifically, Defendants argued that Plaintiffs "fail[ed] to allege any facts showing that [Defendant Southeast Michigan Surgical Hospital] operated or managed the affairs of the enterprises identified in the [c]omplaint." *Id*. at 624. But Plaintiffs adequately alleged that Defendant Southeast Michigan Surgical Hospital conducted or participated in the three enterprises in which it was named as a

Defendant: the Robertson P.C. enterprise, the Quiroga P.C. enterprise, and the Comprehensive Neuromonitoring enterprise.[5]

For all three enterprises, Plaintiffs alleged that Defendant Southeast Michigan Surgical Hospital conducted or participated in the enterprise by "repeatedly and intentionally submit[ing], caus[ing] to be submitted, or kn[owing] that documentation would be submitted to [Plaintiffs] for medical services that . . . they knew would be billed by [the enterprise]." ECF 1, PgID 94 (Robertson P.C. enterprise); 97–98 (Quiroga P.C. enterprise); 101 (Comprehensive Neuromonitoring enterprise). And Defendant Southeast Michigan Surgical Hospital allegedly provided all three enterprises with "facilities at which to bill for medically unnecessary procedures." *Id.* at 94 (Robertson P.C. enterprise); 98 (Quiroga P.C. enterprise); 101 (Comprehensive Neuromonitoring enterprise). Plaintiffs claimed that Defendant Southeast Michigan

---

[5] Defendants appeared to assume from the start that Defendants operated as an association-in-fact enterprise. An association-in-fact is one of the many types of entities—and the only non-legal entity—that can be considered a RICO enterprise. 18 U.S.C. § 1961(4). To be considered an association-in-fact, a group must have (1) "a purpose," (2) "relationships among those associated with the enterprise," and (3) "longevity sufficient to permit these associates to pursue the enterprise's purpose." *Boyle v. United States*, 556 U.S. 938, 946 (2009). And Defendants argued that the complaint failed to "plead facts showing the conduct of an enterprise" by Defendant Southeast Michigan Surgical Hospital because it alleged no "facts showing a common purpose and coordinated effort." ECF 41, PgID 619–20. Yet the enterprises in which Plaintiff alleged Defendant Southeast Michigan Surgical Hospital participated—the Robertson PC enterprise, the Quiroga PC enterprise, and the Comprehensive Neuromonitoring enterprise—are all legal entities. ECF 1, PgID 93, 95, 97, 99, 100, 102; *see* 18 U.S.C. § 1961(4) (defining an enterprise as "any individual, partnership, corporation, association, or other legal entity"). Since an association-in-fact only applies in the context of non-legal entities, Defendants' assumption that Defendants operated as an association-in-fact is incorrect. Thus, Defendants' argument that the complaint was insufficient because it alleged no "facts showing a common purpose and coordinated effort" is inapposite. ECF 41, PgID 620.

Surgical Hospital conspired with other Defendants "to further, facilitate, support, and operate the [] enterprise" in violation of 18 U.S.C. § 1962(c). *Id.* at 95 (Robertson P.C. enterprise); 99 (Quiroga P.C. enterprise); 103 (Comprehensive Neuromonitoring enterprise). Plaintiffs last alleged that Defendant Southeast Michigan Surgical Hospital, along with the other Defendants in the enterprise, "were aware of [the conspiracy's] purpose and agreed to take steps to meet the conspiracy's objectives, including the creation and submission to [Plaintiffs] of insurance claim documents . . . containing material misrepresentations." *Id.* at 96 (Robertson P.C. enterprise); 99 (Quiroga P.C. enterprise); 103 (Comprehensive Neuromonitoring enterprise).

Taken together, the allegations show that Plaintiffs adequately alleged that Defendant Southeast Michigan Surgical Hospital conducted or participated in the three enterprises in which it was named as a Defendant. By alleging that Defendant Southeast Michigan Surgical Hospital knowingly conspired with other Defendants to further the goals of the enterprise, created materially false documentation, and provided facilities to operate the enterprise, Plaintiffs sufficiently pleaded facts showing that Defendant Southeast Michigan Surgical Hospital had, at minimum, "*some* part in directing the enterprise's affairs." *Reves*, 507 U.S. at 179; *see also State Farm Mut. Auto. Ins. Co. v. Pointe Physical Therapy, LLC*, 107 F. Supp. 3d 772, 785–87 (E.D. Mich. 2015) (finding that complaint allegations that clearly alleged the role and involvement of each defendant satisfied the *Reves* standard). The Court will

therefore deny the motion to dismiss as to the conduct of an enterprise claim because the complaint adequately alleged conduct of a RICO enterprise.

B.    *Distinctness*

"To establish liability under § 1962(c), a plaintiff must allege and prove the existence of two distinct entities: (1) a 'person'; and (2) an 'enterprise' that is not simply the same 'person' referred to by a different name." *In re ClassicStar Mare Lease Litig.*, 727 F.3d 473, 490 (6th Cir. 2013) (internal quotation marks omitted) (quoting *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 161 (2001)). "This principle is known as the 'non-identity' or 'distinctness' requirement." *Id.* (quoting *Begala v. PNC Bank, Ohio, N.A.*, 214 F.3d 776, 781 (6th Cir. 2000)). Thus, "a corporation cannot be both the 'enterprise' and the 'person' conducting or participating in the affairs of that enterprise." *Begala*, 214 F.3d at 781 (citation omitted). In other words, "a corporation may not be liable under section 1962(c) for participating in the affairs of an enterprise that consists only of *its own* subdivisions, agents, or members. An organization cannot join with its own members to undertake regular corporate activity and thereby become an enterprise distinct from itself." *Id.* (emphasis added and citation omitted).

Defendants argued that the complaint violated the distinctness requirement because it "so intermingles the RICO 'persons' and the RICO 'enterprises' as to render them indistinguishable." ECF 41, PgID 626. To bolster the argument, Defendants stressed that Plaintiffs named Defendant Southeast Michigan Surgical Hospital as an enterprise in claims one and two but named Defendant Southeast Michigan

11

Surgical Hospital as a participant in other enterprises in claims three through eight. *Id.* at 626–28. According to Defendants, the first eight claims of the complaint failed to satisfy the distinctness requirement for RICO claims and should be dismissed. *Id.* at 628.

Defendants' argument fails. Claims one and two named Defendant Southeast Michigan Surgical Hospital as the enterprise. ECF 1, PgID 89 ("SE MI Hospital Enterprise"); 91 ("SE MI Hospital Enterprise"). And both claims listed Defendants Robertson PC, Quiroga PC, Comprehensive Neuromonitoring LLC, Robertson, Quiroga, and Broder as the participants in that enterprise. *Id.* at 89, 91. Plaintiffs therefore did not allege that Defendant Southeast Michigan Surgical Hospital conducted or participated in the affairs of the enterprise; that defendant was named solely as the RICO enterprise itself. And the law only prohibits Defendant Southeast Michigan Surgical Hospital from simultaneously being "both the enterprise and the person conducting or participating in the affairs of *that* enterprise." *Begala*, 214 F.3d at 781 (cleaned up). Because the complaint does not allege that Defendant Southeast Michigan Surgical Hospital conducted or participated in the affairs of its own enterprise, Plaintiffs have satisfactorily pleaded the existence of a "person" and an "enterprise that is not simply the same person referred to by a different name." *ClassicStar*, 727 F.3d at 490 (quotation marks and quotation omitted).

The same is true for claims three through eight. Defendant Southeast Michigan Surgical Hospital is not named as the enterprise in those claims. *See* ECF 1, PgID 93–102. Instead, it is named as a participant in the "Robertson, P.C.

12

Enterprise," the "Quiroga, P.C. Enterprise," and the "Comprehensive Neuromonitoring Enterprise." *See id.* at 93, 95, 97, 99–100, 102. Accordingly, the complaint satisfies the distinctness requirement for claims three through eight. The Court will deny the motion to dismiss as to the distinctness argument.

      *C.*    *RICO Conspiracy*

Defendants argued that the Court should dismiss the complaint because Plaintiffs failed to "plausibly allege a RICO conspiracy" under 18 U.S.C. § 1962(d). ECF 41, PgID 629 (alterations omitted). Citing non-binding case law from other circuits, Defendants argued that the complaint was insufficient because it failed to name the members of Defendant Southeast Michigan Surgical Hospital as parties in the case and made "only conclusory allegations" that Defendant Southeast Michigan Surgical Hospital "was a party to a meeting of the minds to engage in predicate acts." *Id.* at 630. Defendants also contended that Plaintiffs "failed to allege any facts that a recognized officer o[r] agent of Defendant [Southeast Michigan Surgical Hospital] conspired with the other Defendants in th[e] action." *Id.* at 631.

Both arguments lack support. First, Defendants cited no authority that would require Plaintiffs to show a meeting of the minds to engage in the alleged conspiracy. *See id.* at 630. And second, Defendants offered no support for their claim that Plaintiffs were required to allege facts showing that a "recognized officer of" Defendant Southeast Michigan Surgical Hospital conspired with the other Defendants in the case. *See id.* at 630–31. And a review of the complaint shows that Plaintiffs did, in fact, offer specific factual allegations about Defendant Southeast

Michigan Surgical Hospital's actions to conspire with other Defendants. For instance, the complaint alleged that Defendant Southeast Michigan Surgical Hospital participated in all three enterprises in which it was named as a Defendant by "repeatedly and intentionally submit[ing], caus[ing] to be submitted, or kn[owing] that documentation would be submitted to [Plaintiffs] for medical services that . . . they knew would be billed by [the enterprise]." ECF 1, PgID 94 (Robertson P.C. enterprise); 97–98 (Quiroga P.C. enterprise); 101 (Comprehensive Neuromonitoring enterprise).

Plaintiffs also alleged that Defendant Southeast Michigan Surgical Hospital provided all three enterprises with "facilities at which to bill for medically unnecessary procedures." *Id.* at 94 (Robertson P.C. enterprise); 98 (Quiroga P.C. enterprise); 101 (Comprehensive Neuromonitoring enterprise). Plaintiffs further alleged that Defendant Southeast Michigan Surgical Hospital conspired with other Defendants to "to further, facilitate, support, and operate the [] enterprise" in violation of 18 U.S.C. § 1962(c). *Id.* at 94 (Robertson P.C. enterprise); 99 (Quiroga P.C. enterprise); 103 (Comprehensive Neuromonitoring enterprise). In short, the RICO allegations in the complaint were supported by specific factual examples and Defendants' argument fails.

The Court will deny the motion to dismiss on all three grounds raised by Defendants as to the RICO claim. The complaint satisfactorily alleged conduct of a RICO enterprise. The complaint also satisfied the distinctness requirement. And

Defendants' arguments as to the alleged RICO conspiracy were conclusory and unsupported.

III.    <u>Common Law Fraud</u>

Defendants argued that Plaintiffs failed to properly plead common law fraud. ECF 41, PgID 631. To state a claim for common law fraud in Michigan, a plaintiff must establish the following six elements:

> (1) That defendant made a material representation; (2) that it was false; (3) that when he made it he knew that it was false, or made it recklessly, without any knowledge of its truth, and as a positive assertion; (4) that he made it with the intention that it should be acted upon by plaintiff; (5) that plaintiff acted in reliance upon it; and (6) that he thereby suffered injury.

*Hi-Way Motor Co. v. Int'l Harvester Co.*, 398 Mich. 330, 336 (1976) (quotation omitted). "Each of these facts must be proved with a reasonable degree of certainty, and all of them must be found to exist; the absence of any one of them is fatal to a recovery." *Id.* (quotation omitted). In addition to satisfying the elements for common law fraud, a claimant must satisfy the particularity requirement of Federal Rule of Civil Procedure 9(b), which provides: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." The Sixth Circuit has interpreted Rule 9(b) to require that a plaintiff "allege the time, place, and content of the alleged misrepresentations on which he or she relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud." *Yuhasz v. Brush Wellman, Inc.*, 341 F.3d 559, 563 (6th Cir. 2003) (quotation omitted).

15

Defendants asserted that Plaintiffs failed to "make a single specific factual allegation supporting a fraud claim against" Defendant Southeast Michigan Surgical Hospital. ECF 41, PgID 632. Specifically, Defendants argued that Plaintiffs provided "no factual basis for a claim that [Defendant Southeast Michigan Surgical Hospital] knew a [billing code] was being used fraudulently rather than by simple user error." *Id.* at 633. The Court disagrees.

To begin, Plaintiffs properly pleaded the elements of common law fraud. First, they alleged that Defendants made material misrepresentations. ECF 1, PgID 104 ("The scheme to defraud . . . was dependent upon a succession of material misrepresentations of fact."). Second, they alleged that the misrepresentations were false. *Id.* ("The . . . representations were false or required disclosure of additional facts."). Third, they alleged that Defendants made the misrepresentations knowingly. *Id.* at 105 ("The misrepresentations were intentionally made by . . . [D]efendants in furtherance of their scheme to defraud."). Fourth, they alleged that Defendants made misrepresentations with the intent that Plaintiffs would act on those misrepresentations. *Id.* ("The . . . misrepresentations were known to be false and were made for the purpose of inducing [Plaintiffs] to make payments for claims that are not compensable under Michigan law."). Fifth, they alleged that they had acted in reliance on the misrepresentations. *Id.* ("[Plaintiffs] reasonably relied upon such material misrepresentations to [their] detriment."). And sixth, they alleged an injury because of that reliance. *Id.* ("As a direct and proximate result of the defendants' fraudulent representations and acts, [Plaintiffs have] been damaged in [their]

16

business and property."). Plaintiffs thus adequately alleged the elements of common law fraud.

Plaintiffs satisfied the particularity standard of Rule 9(b) as well. As noted, the Sixth Circuit has interpreted Rule 9(b) to require that a plaintiff "allege the time, place, and content of the alleged misrepresentations on which he or she relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud." *Yuhasz*, 341 F.3d at 563. And the complaint satisfied the particularity requirement as defined by *Yuhasz*. First, the complaint alleged a fraudulent scheme by Defendants. *Id.* at 104 ("The scheme to defraud . . . was dependent upon a succession of material misrepresentations of fact."). Second, the complaint alleged that Defendants acted knowingly and with fraudulent intent. *Id.* ("The . . . misrepresentations were known to be false and were made for the purpose of inducing [Plaintiffs] to make payments for claims that are not compensable under Michigan law."). Third, the complaint alleged that Plaintiffs suffered an injury resulting from the fraud. *Id.* ("As a direct and proximate result of the defendants' fraudulent representations and acts, [Plaintiffs have] been damaged in [their] business and property."). And fourth, the complaint alleged the time, place, and content of the alleged misrepresentations. *See* ECF 1, PgID 8 (alleging that Defendants billed Plaintiffs for "unnecessary and excessive services for routine procedures"); 18 (alleging that Defendants "fax[ed] and mail[ed] demands for payment for services that were not rendered" and that they did so "through interstate wires and the U.S. Mail"); ECF 1-6, PgID 192–95 (table displaying all alleged

fraudulent charges, the date of the charge, the Defendant who sent it, how it was sent, and the contents of the charge). In sum, because the complaint satisfactorily alleged both the elements of common law fraud and the particularity requirement of Rule 9(b), the Court will deny the motion to dismiss as to the common law fraud claim.

IV.   <u>Civil Conspiracy</u>

Defendants asserted that Plaintiffs failed to properly allege a civil conspiracy because they did not "state[] any facts showing that [Defendant Southeast Michigan Surgical Hospital] made a concerted effort with other parties to accomplish an unlawful purpose." ECF 41, PgID 634–35. Plaintiffs responded that the complaint "include[d] numerous specific allegations that describe the agreement between [] [D]efendants to pursue a scheme to defraud [Plaintiffs] and the implementation of that scheme." ECF 43, PgID 737.

In Michigan, a civil conspiracy is "a combination of two or more persons, by some concerted action, to accomplish a criminal or unlawful purpose, or to accomplish a lawful purpose by criminal or unlawful means." *Admiral Ins. Co. v. Columbia Cas. Ins. Co.*, 194 Mich. App. 300, 313 (1992) (citations omitted). "[T]he plaintiff must show that there was a single plan, that the alleged coconspirator shared in the general conspiratorial objective, and that an overt act was committed in furtherance of the conspiracy that caused injury to the complainant." *Roche Diagnostics Corp. v. Shaya*, 427 F. Supp. 3d 905, 924 (E.D. Mich. 2019) (internal quotation marks and quotation omitted). The existence of an agreement may be inferred from the "circumstances, acts[,] and conduct of the parties." *Fremont Reorganizing Corp. v. Duke*, 811 F. Supp.

18

2d 1323, 1341 (E.D. Mich. 2011) (quotation omitted). "A civil conspiracy, by itself, is not a cognizable claim but is defined by the tort that constitutes the underlying theory of liability." *Mekani v. Homecomings Fin., LLC*, 752 F. Supp. 2d 785, 789 n.2 (E.D. Mich. 2010).

Plaintiffs adequately pleaded civil conspiracy. The complaint alleged that Defendants "combined and acted in concert to accomplish the unlawful purpose of defrauding [Plaintiffs] by submitting claims for payment . . . to which they were not entitled." ECF 1, PgID 106; 17 (alleging that "Defendants Robertson PC, Quiroga PC, Comprehensive Neuromonitoring, Robertson, Quiroga, and Broder used [Defendant Southeast Michigan Surgical Hospital's] unscrupulous practices to generate their own fraudulent and improper bills to [Plaintiffs]" and that "[t]he relationship between [Defendant Southeast Michigan Surgical Hospital] and the providers . . . was symbiotic" because it enabled Defendant Southeast Michigan Surgical Hospital "to submit exorbitant charges for facility fees"). The complaint also alleged that Defendants "worked together to achieve an unlawful purpose" and "intentionally pursued" that purpose. *Id.*; *see also id.* at 16–17 ("[Defendant Southeast Michigan Surgical Hospital] intentionally worked with [the other Defendants] to generate massive charges for services that were not performed."). By paying the claims, Plaintiffs argued, they had experienced an "unjustified detriment" while Defendants "directly benefited." *Id.* at 107. Taken together, the allegations show a single plan, investment in the plan by the coconspirators, overt acts in furtherance of that plan, and a resultant injury to Plaintiffs. *See Roche*, 427 F. Supp. 3d at 924. Thus, Plaintiffs

19

have stated a claim for civil conspiracy, so the Court will deny the motion to dismiss as to the civil conspiracy claim.

V.    Payment Under Mistake of Fact

Defendants argued that Plaintiffs failed to plead a claim for payment under mistake of fact because they did not allege that there was a contract to reform. ECF 41, PgID 634. "Under Michigan law, when one is over-billed and then mistakenly submits full payment in response to that bill, one has made a mistake of fact." *Process Control & Instrumentation, LLC v. Emerson Process Mgmt. Power & Water Sols., Inc.*, No. 12-15670, 2014 WL 2931391, at *8 (E.D. Mich. June 30, 2014) (collecting cases). Generally, "money paid under a mistake of material facts may be recovered back [even if] there was negligence on the part of the person making the payment." *Walker v. Conant*, 65 Mich. 194, 197–98 (1887). The only exception to this principle is if the payment has "caused such a change in the position of the payee that it would be unjust to require the refund." *Wilson v. Newman*, 463 Mich. 435, 441 (2000) (quotation omitted).

Plaintiffs alleged in the complaint that they "paid the [billed] amounts . . . under a misunderstanding, misapprehension, error, fault, or ignorance of material facts, namely, the scheme to defraud [Plaintiffs] by misrepresenting the fact, lawfulness, and necessity of services billed by [Defendants]." ECF 1, PgID 107. As a result, Plaintiffs alleged, they "sustained damages." *Id.* at 108. They argued that Defendants would be "unjustly enriched if permitted to retain the payments made to them by [Plaintiffs] under a mistake of fact." *Id.* In short, Plaintiffs alleged that they

were overbilled, that they mistakenly submitted payments in response to those bills, and that suffered damages as a result. *See Process Control*, 2014 WL 2931391, at *8. Accordingly, Plaintiffs adequately alleged payment under a mistake of fact theory.

Defendants argued that Plaintiffs' failure to identify in the complaint "any contracts that should be reformed" means that the payment under mistake of fact claim should be dismissed. ECF 41, PgID 634 (citing *Johnson Fam. Ltd. P'ship v. White Pine Wireless, LLC*, 281 Mich. App. 364, 380 (2008) ("Michigan has long recognized that an agreement may be reformed based on a unilateral mistake.")). But that principle has no relevance to the claim of payment under mistake of fact, and Defendants made no attempt to connect the two. *See id.* For example, Defendants did not explain how the alleged failure to identify a contract to be reformed has any bearing on whether Plaintiffs adequately pleaded payment under mistake of fact. *See id.* Defendants' argument fails, and the Court will deny the motion to dismiss as to the claim for payment under mistake of fact.

## VI.   Unjust Enrichment

Defendants next argued that Plaintiffs failed to plead a claim for unjust enrichment because the complaint "is silent as to whether [Defendant Southeast Michigan Surgical Hospital] received payment as part of a settlement agreement in connection with a [S]tate court No-Fault case or whether the payment was made pursuant to a patient's insurance policy." ECF 41, PgID 635. Because there was no "express contract covering the subject matter," argued Defendants, the unjust enrichment claim failed. *Id.*

"A person who has been unjustly enriched at the expense of another is required to make restitution to the other." *Mich. Educ. Emps. Mut. Ins. Co. v. Morris*, 460 Mich. 180, 198 (1999) (cleaned up). "[T]o sustain a claim of . . . unjust enrichment, a plaintiff must establish (1) the receipt of a benefit by the defendant from the plaintiff and (2) an inequity resulting to the plaintiff because of the retention of the benefit by the defendant." *Morris Pumps v. Centerline Piping, Inc.*, 273 Mich. App. 187, 195 (2006) (citation omitted).

Defendants did not dispute that Plaintiffs properly alleged the elements of unjust enrichment. Instead, Defendants argued that the lack of an "express contract covering the subject matter" doomed the unjust enrichment claim. But Defendants failed to explain why an express contract must be shown for a party to sustain an unjust enrichment claim. *See id.* Indeed, Michigan courts have clarified that the lack of an express contract does *not* bar a claim of unjust enrichment. *Mich. Ed. Emps.*, 460 Mich. at 193 (noting that unjust enrichment claims can go forward "[e]ven though no contract may exist between the two parties") (quotation omitted). Thus, the failure to mention an express contract in the complaint is not fatal to the unjust enrichment claim.

And both examples offered by Defendants are unhelpful. Defendants provided no substantiation for their claim that Plaintiff's unjust enrichment claim fails simply because they did not allege that Defendant Southeast Michigan Surgical Hospital may have "received payment as part of a settlement agreement in connection with a [S]tate court No-Fault case." ECF 41, PgID 635. The existence of patients who have

insurance policies through Plaintiffs does not create an express contract between Plaintiffs and Defendants. The Court will accordingly deny the motion to dismiss as to the unjust enrichment claim.

VII.   <u>Declaratory Judgment</u>

Defendants contended that Plaintiffs' claim for declaratory judgment under 28 U.S.C. § 2201 should be dismissed. ECF 41, PgID 636. Because "[a] request for declaratory judgment should not be considered unless and until the plaintiffs [have] established their right to relief under one of the substantive claims," Defendants argued, Plaintiffs' failure to establish a right to relief on any of their claims means that the declaratory judgment claim should also fail. *Id.*; *see Int'l Ass'n of Mach. and Aerospace Workers v. T.V.A.*, 108 F.3d 658, 668 (6th Cir. 1997). But as explained above, Plaintiffs have properly pleaded at least one substantive claim. And no party argued that the Court lacked jurisdiction over the claims raised in the complaint. *See* ECF 41; 43; 44. Thus, the Court will not dismiss the declaratory judgment claim.

VIII.   <u>Motion to Strike</u>

Last, Defendants claimed that the complaint was "rife with redundant, immaterial, impertinent, and scandalous allegations that should be stricken" under Federal Rule of Civil Procedure 12(f). ECF 41, PgID 636. First, Defendants argued that the complaint tried "to link Defendant [Southeast Michigan Surgical Hospital] to 'unscrupulous' medical providers who allegedly were investigated by the FBI, saw patients while under the influence of cocaine, and used cocaine with prostitutes at a medical clinic other than Defendant [Southeast Michigan Surgical Hospital's]

facility." *Id.* at 637. According to Defendants, "[t]hese allegations serve no purpose other than to unfairly prejudice Defendant [Southeast Michigan Surgical Hospital]." *Id.* Second, Defendants argued that the complaint's references to two deleted screenshots of Defendant Southeast Michigan Surgical Hospital's website showing Defendant Southeast Michigan Surgical Hospital's association with doctors who were under investigation were inappropriate because "[t]he obvious purpose of these allegations is to link Defendant [Southeast Michigan Surgical Hospital] to the alleged misconduct of others." *Id.* Third, Defendants argued that the complaint allegations "associating Defendant [Southeast Michigan Surgical Hospital] with the alleged misconduct of non-parties Jeffrey Oppenheimer, M.D., and David Jankowski, D.O." were "irrelevant and impertinent" because they claimed that Defendant Southeast Michigan Surgical Hospital billed them for services that are not at issue in the case. *Id.* at 638. Fourth, Defendants argued that the complaint improperly alleged several unknown procedures performed by unnamed physicians at a separate clinic. *Id.* Fifth, Defendants claimed that the complaint again "unfairly prejudice[d]" Defendant Southeast Michigan Surgical Hospital by linking it to procedures performed by non-party Dr. Jeffrey Wingate. *Id.* at 639. Sixth and finally, Defendants argued that the allegations about Defendant Southeast Michigan Surgical Hospital billing for services performed by several unnamed physicians were "irrelevant, impertinent, and serve no other purpose than to unfairly prejudice Defendant [Southeast Michigan Surgical Hospital]." *Id.* at 640. In sum, Defendants argued that "the allegations detailed above are impertinent and immaterial because they are not relevant to the

24

issues involved in this action." *Id.* at 641 (quotation marks and quotation omitted). Defendants also claimed that the allegations were "scandalous" because they "attempted to taint the reputation of Defendant [Southeast Michigan Surgical Hospital] by connecting it to the alleged bad acts of others." *Id.*

Rule 12(f) provides that the Court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." The Court has "wide discretion" under Rule 12(f), but motions to strike are "disfavor[ed]" and "infrequently granted because a motion to strike proposes a drastic remedy." *L & L Gold Assocs., Inc. v. Am. Cash for Gold, LLC*, No. 09–10801, 2009 WL 1658108, at *1 (E.D. Mich. June 10, 2009) (cleaned up). "An allegation is impertinent or immaterial when it is not relevant to the issues involved in the action. Scandalous generally refers to any allegation that unnecessarily reflects on the moral character of an individual or states anything in repulsive language that detracts from the dignity of the court." *Id.* (quotation marks and quotation omitted).

The Court will deny the motion to strike because the allegations identified by Defendants are relevant to the overall claim brought by Plaintiffs, an extensive scheme in which each Defendant sought to generate false and unnecessary billings to defraud Plaintiffs. *See, e.g.*, ECF 1, PgID 7. Simply put, the backgrounds of each Defendant—specifically, whether each Defendant previously engaged in similar fraudulent conduct—are relevant to that claim and thus not violative of Rule 12(f). *See State Farm Mut. Auto. Ins. Co. v. Pointe Physical Therapy, LLC*, 107 F. Supp. 3d 772, 801 (E.D. Mich. 2015) ("An allegation is impertinent or immaterial when it is not

relevant to the issues involved in the action.") (quotation marks and quotation omitted). Their backgrounds are relevant because whether they had engaged in similar fraudulent conduct could support a claim that they engaged in such conduct in the present alleged scheme. And those allegations are not irrelevant simply because Plaintiffs included screenshots of non-parties associated with Defendant Southeast Michigan Surgical Hospital or alleged conduct by non-party physicians. *See* ECF 1, PgID 10–12. Indeed, the complaint explicitly tied all of the allegations challenged by Defendants—including the allegations involving non-party physicians—back to the main claim, that Defendants were involved in a scheme to defraud. *Id.* at 16 (noting that Defendant Southeast Michigan Surgical Hospital's "association with individuals with criminal and disciplinary histories is not limited to the physicians who ordered the purported services" and that Defendant Southeast Michigan Surgical Hospital "targeted" and "associated with . . . physicians with extensive disciplinary and criminal histories" to carry out its alleged scheme to "generate false and improper bills for submission to [Plaintiffs]"). Thus, the allegations are relevant to the claims brought by Plaintiffs, and the "drastic" remedy of striking the allegations is unwarranted. *See L & L Gold Assocs.*, 2009 WL 1658108, at *1 (quotation omitted).

## ORDER

The Court will deny the motion to dismiss on all grounds raised by Defendants.

The Court will also deny the motion to strike.

**WHEREFORE**, it is hereby **ORDERED** that the motion to dismiss and to

strike [41] is **DENIED**.

**SO ORDERED.**

s/ Stephen J. Murphy, III
STEPHEN J. MURPHY, III
United States District Judge

Dated: June 21, 2023

I hereby certify that a copy of the foregoing document was served upon the parties
and/or counsel of record on June 21, 2023, by electronic and/or ordinary mail.

s/ R. Loury
Case Manager
